[No. 2179]

# NEVADA INDUSTRIAL COMMISSION, RESPONDENT, *v.* WASHOE COUNTY, APPELLANT.

[171 Pac. 511]

1. STATUTES—SUBJECTS AND TITLES—SUFFICIENCY.

Stats. 1913, c. 111, entitled "An act relating to the compensation of injured workmen in the industries of this state and the compensation to their dependents where such injuries result in death, creating an industrial insurance commission, providing for the creating and disbursement of funds for the compensation and care of workmen injured in the course of employment, and defining and regulating the liability of employers to their employees, and repealing all acts and parts of acts in conflict with this act," sufficiently embraces within its title the purpose expressed by section 1, subd. b, thereof, making counties and other municipal corporations subject to the act, and therefore does not offend Const. art. 4, sec. 17, providing that every law shall embrace but one subject, which shall be briefly expressed in its title.

2. CONSTITUTIONAL LAW—MASTER AND SERVANT—DUE PROCESS OF LAW—WORKMEN'S COMPENSATION ACT.

Workmen's Compensation Act (Stats. 1913, c. 111), sec. 1, subd. b, making counties subject thereto, is not unconstitutional as depriving counties of due process of law, the money required to be paid by the counties going for a public purpose of supporting the indigent, which is a legitimate charge on the people of the state and its various subdivisions.

3. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — DEFENSES.

A county cannot defeat the state industrial commission's action for moneys to compensate an injured employee of the county, on the theory that there is no money in the county treasury available, in the absence of an answer pleading such fact.

4. CONSTITUTIONAL LAW—CLASS LEGISLATION—WORKMEN'S COMPENSATION ACT.

Stats. 1913, c. 111, sec. 1, subd. b, making counties liable under the Workmen's Compensation Act, is not unconstitutional as discriminatory; the classification of counties being reasonable.

APPEAL from Second Judicial District Court, Washoe County; *A. N. Salisbury*, Judge.

Suit by the Nevada Industrial Commission against Washoe County. Judgment for plaintiff on defendant's refusal to plead further after its demurrer to the complaint was overruled, and defendant appeals. **Affirmed.**

*E. F. Lunsford,* District Attorney, and *A. N. Salisbury,* Assistant District Attorney, for Appellant:

The complaint in this action fails to state facts sufficient to constitute a cause of action, the statute upon which it is based (Stats. 1913, p. 137) being invalid and unconstitutional, for the following reasons:

1. Said statute violates the fifth amendment to the constitution of the United States, which provides that no person shall be deprived of life, liberty, or property without due process of law, and that private property shall not be taken for private use without just compensation, and is violative of section 8, article 1, of the constitution of Nevada, which contains similar provisions.

2. It is violative of the provisions of section 21, article 4, of the constitution of Nevada, which provides that in all cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state.

3. The statute unduly and unjustly discriminates between individuals and municipal corporations, creating and establishing a classification unwarranted by law and not founded upon any reasonable basis, and for which classification no natural or substantial reason inheres in the subject-matter.

The title of the act indicates clearly that the act is designed to protect only workmen employed in the industries of the state. The word "industries" has a restricted and well-defined meaning. (Webster's Dictionary; Words and Phrases, vol. 4.) While the details of a statute need not be specifically stated in the title, the matters germain to the subject and adapted to the accomplishment of the object in view may properly be included; and this court has always held that it is necessary to express in the title of a legislative act the principal subject embodied in the law, and that the general purpose is accomplished only when a law has but one general object, fairly indicated by its title. (*Humboldt Co.* v. *County Comm.,* 6 Nev. 31; *State* v. *Ah Sam,* 15 Nev. 27; *State* v. *Hallock,* 19 Nev. 384; *State* v.

*Hoadley,* 20 Nev. 317; *State* v. *Comm.,* 22 Nev. 399; *State* v. *Gibson,* 30 Nev. 353; *State* v. *Stone,* 24 Nev. 308.)

It cannot be seriously contended that a county is an industry, as contemplated within the meaning of the word used in the title of this act. And it is well settled that a county is not even a municipal corporation, but is only a governmental division of the state for a matter of convenience. Counties, as such, have a corporate capacity only for particular specified purposes, and such powers only as are specifically granted by the act of incorporation. (11 Cyc. 341, 457; Am. & Eng. Ency. Law, vol. 7, pp. 901, 902.)

The taking of private property for public purposes by taxation authorized by competent legislative authority is according to due process of law, but when the purpose is clearly not public the courts will declare the act unconstitutional. (8 Cyc. 1130.)

The paying of any assessment under the act in question would require the levy of a special tax for the purpose of raising the necessary fund, which is not permissible. The legislature has no power to appropriate to a creditor or to a donee of the state money raised by a tax levied upon and collected from the taxpayers of a particular county. (*Williams* v. *Bidleman,* 7 Nev. 71.)

Counties, in the absence of statutory provisions, are not liable for tortious actions. (7 Am. & Eng. Ency. Law, 947; 11 Cyc. 497; *Madden* v. *Lancaster Co.,* 65 Fed. 188; *Kinkead* v. *Hardin,* 36 Am. Rep. 236.)

The statute is violative of the provisions of the state constitution because it is not of general and uniform operation, unjustly discriminating between private individuals and municipal corporations and establishing a classification unwarranted by law. A statute which imposes upon a private corporation a liability for injuries to employees which does not exist in the case of individuals or partnerships, the conditions and circumstances being similar, violates the constitutional provision guaranteeing equal protection of the laws. (*Bedford Quarries Co.* v. *Bough,* 168 Ind. 671, 80 N. E. 529, 14 L. R. A. n. s.

418; *Matheson* v. *Minneapolis Street Ry. Co.*, 148 N. W. 71; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271.)

*Geo. B. Thatcher*, Attorney-General, *E. T. Patrick*, Deputy Attorney-General, and *Wm. McKnight*, Deputy Attorney-General, for Respondent:

There is no merit whatever in any of the objections raised by appellant. The word "industries" has a much broader meaning than that attributed to it by counsel. It means the "department or branches of art, occupation or business." (Webster's New International Dict.) "Occupation" is defined to be that which occupies or engages the time or attention; the principal business of one's life, vocation, employment, calling, trade. (*Union Mut. A. Assn.* v. *Frohard*, 134 Ill. 228.) It embraces the duties of a public office. (*Schuchardt* v. *People*, 99 Ill. 501.) "Workmen," in the title to the act, was employed in its generic sense, intended to include the employees of a county as well as the servants of individuals or private corporations. (*L. & C. Co.* v. *Industrial Accident Board*, 155 Pac. 268.)

The provisions of the constitution under consideration should be liberally construed. (*State* v. *Comm.*, 21 Nev. 235; *State* v. *Comm.*, 22 Nev. 399; *State* v. *Ah Sam*, 15 Nev. 27; *State* v. *State B. & T. Co.*, 31 Nev. 456; *State* v. *Ah Pah*, 34 Nev. 283; *McBride* v. *Griswold*, 38 Nev. 56; *First Nat. Bank* v. *Nye Co.*, 38 Nev. 123.) This is especially true with reference to acts providing compensation to injured workmen. (*Mackin* v. *Detroit-Timken Axle Co.*, 153 N. W. 49; *Memphis Cotton Oil Co.* v. *Tolbert*, 171 S. W. 309; *Shade* v. *Ash Grove L. Co.*, 144 Pac. 249.) It is perfectly proper to give some slight enlargement to the literal meaning of the title of a law. (*State* v. *Ah Sam*, *supra.*)

Legislatures may enact laws which apply only to certain classes, if the basis for the classification is reasonable. (*Pyramid L. & L. Co.* v. *Pierce*, 30 Nev. 237; *Ex Parte Boyce*, 27 Nev. 299; *State* v. *Cal. M. Co.*, 15 Nev.

249; *Ex Parte Pittman,* 31 Nev. 43; *Porter* v. *Hopkins,* 109 N. E. 629.)

All presumptions are in favor of the constitutionality of a statute; it will be held valid until the mind of the court is clearly convinced to the contrary. (*Evans* v. *Job,* 8 Nev. 322; *State* v. *Comm.,* 21 Nev. 238.) In cases of doubt, every possible presumption and intendment will be made in favor of the constitutionality of the statute in question. (*State* v. *Irwin,* 5 Nev. 120; *State* v. *Comm.,* 21 Nev. 238; *Quilici* v. *Strosnider,* 34 Nev. 9.) The constitutionality of workmen's compensation and industrial insurance laws has many times been before the courts, and such laws have been uniformly declared constitutional. (L. R. A. 1916A, 409; Ann. Cas. 1912B, 174, 1915A, 247, 1916B, 1286.)

By the Court, COLEMAN, J.:

The Nevada Industrial Commission brought suit against Washoe County, in the district court of that county to collect premiums alleged to be due pursuant to an act relative to the compensation of injured workmen. (Stats. 1913, p. 137.) A general demurrer was interposed by the defendant, and, upon being overruled, the defendant electing to stand upon its demurrer, judgment was rendered in favor of plaintiff, from which this appeal is taken.

The complainant alleges its right to sue, pursuant to the terms of the act mentioned; alleges the existence of the defendant; that defendant employed in the carrying on of its county government various and sundry persons; and that on account thereof the defendant became indebted to the plaintiff in the sum of $313.15, which it refused to pay. Subdivision b of section 1 of the act in question reads:

"Where the state, county, municipal corporation, school district, cities under special charter or commission form of government is the employer, the limitations of two employees shall not apply, and as to such employees

and employers thereof the rights and remedies as by this act provided to pay compensation for personal injury sustained by such employees arising out of and in the course of the employment shall be exclusive, compulsory and obligatory."

In support of its claim that the lower court erred in overruling its demurrer the county maintains that the act in question is unconstitutional, the first contention being that the title of the act is in violation of section 17, article 4, of the constitution, which provides that every law enacted by the legislature shall embrace but one subject and matters properly connected therewith, which subject shall be briefly expressed in the title, in that it is not sufficiently comprehensive to embrace within its scope the counties of the state. It is said that the word "industries" in the title of the act means pursuits in which human exertion is employed for the creation of value and regarded as a species of capital or wealth, and that a county is not thus engaged. Conceding for the purposes of this case, without so deciding, that the contention of appellant as to the meaning of the word "industries" is correct, we are nevertheless of the view that the title of the act is so comprehensive in its scope as not to offend against section 17, article 4, of the constitution without regard to the rule that a liberal construction should be given in considering the objection urged. (*State* v. *State B. & T. Co.*, 31 Nev. 456–473, 103 Pac. 407, 105 Pac. 567.) The title of the act reads:

"An act *relating to the compensation of injured workmen in the industries of this state and the compensation to their dependents where such injuries result in death*, creating an industrial insurance commission, providing for the creating and disbursement of funds for the compensation and care of workmen injured in the course of employment, and defining and regulating the liability of employers to their employees; and repealing all acts and parts of acts in conflict with this act."

1. We have italicized that portion of the title of the act to which objection is made. We are of the opinion

that, had the portion objected to been entirely omitted, the title of the act would be broad enough to comply with the requirements of the law.    Even then it indicates that the purpose of the act is to create an industrial insurance commission, to provide funds to compensate workmen injured in the course of employment, and to define and regulate the liability of employers to their employees.    The Supreme Court of Michigan, in *Purdy* v. *City of Sault Ste. Marie,* 188 Mich. 573, 155 N. W. 597, Ann. Cas. 1917D, 881, was called to pass upon an objection to the title of an act upon the ground that it was not broad enough to include employees of a municipal corporation.    The title of the act under consideration in that case reads:

"An act to promote the welfare of the people of this state, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the accidental injury to or death of employees, and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act."    (Pub. Acts Mich. [Ex. Sess.] 1912, No. 10.)

In determining the question presented, the court said:

"The title of the act mentions and indicates that its provisions relate to 'liability of employers for injuries or death sustained by their employees.'    It is general, as title of acts must be, and is broad enough to include municipal corporations if they are employers."

2. Since the act in question is compulsory so far as counties are concerned, it is insisted that it is in violation of the due process of law clause of both the state and federal constitutions, although nothing peculiarly applicable to our state constitution is urged under this objection.    We think this contention is fully answered by the Court of Appeals of New York in *Jensen* v. *Southern Pacific Co.,* 215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403, Ann. Cas. 1916B, 276, where it is said:

"Moreover, upon the question whether an act offends against the constitution of the United States the decisions of the United States Supreme Court are controlling. The only one of the numerous workmen's compensation acts which appears to have been directly passed on by the United States Supreme Court is the act of Ohio, which contained an optional clause. (*Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 35 Sup. Ct. 167, 59 L. Ed. 364.) The single question decided in that case was that limiting the application of the act to shops with five or more employees did not result in arbitrary and unreasonable classification.   This act is compulsory.   The employer is subjected to a penalty for not adopting one of the three methods of insurance allowed him, and the employee has no choice at all except possibly as to whether he will enter one of the classified employments. However, except for a feature presently to be considered, the decision in *Noble State Bank* v. *Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. n. s. 1062, Ann. Cas. 1912A, 487, is decisive.   Indeed, upon close analysis it will appear that the taking justified in that case as a proper exercise of the police power was no more in the public interest than that involved in this case, and that the mutual benefits to the parties immediately concerned were not as direct. In that case an act of the State of Oklahoma requiring every bank existing under the state laws to pay an assessment based on average daily deposits into a guaranty fund to secure the full repayment of deposits in case any such bank became insolvent was sustained not merely under the reserve power of the state to alter or repeal charters, but as a proper exercise of the police power.   Solvent banks were thus required to pay money into a fund for the direct benefit of others, the banks benefiting only indirectly from the supposed benefit to commerce and the greater stability of banking.   In this case the mutual benefits are direct.   Granted that employers are compelled to insure, and that there is in that sense a taking.   They insure themselves and their

employees from loss, not others. The payment of the required premiums exempts them from further liability. The theoretical taking, no doubt, disappears in practical experience. As a matter of fact every industrial concern, except the very large ones who insure themselves, have for some time been forced by conditions, not by law, to carry accident indemnity insurance. A relatively small part of the sums thus paid actually reached injured workmen or their dependents. With the economic saving of the present scheme, insurance in the long run should certainly be as cheap as under the old wasteful plan, and the families of all injured workmen, not a part only, will receive some compensation for the loss of earning power of the wage-earner. We should consider practical experience as well as theory in deciding whether a given plan in fact constitutes a taking of property in violation of the constitution. A compulsory scheme of insurance to secure injured workmen in hazardous employments and their dependents from becoming objects of charity certainly promotes the public welfare as directly as does an insurance of bank depositors from loss."

The same question has been passed upon by the Supreme Court of California in the case of *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 151 Pac. 398, where the various decisions in point were considered, the court reaching the conclusion that the act did not violate the constitutional inhibition. As has been seen, these statutes are upheld upon the theory that they are but the exercise of the police power of the state.

The Supreme Court of the United States in considering the compulsory workmen's compensation law of the State of Washington in *Mountain Timber Co.* v. *Washington*, 243 U. S. 220, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, where the identical objection was urged, said:

"There remains, therefore, only the contention that it is inconsistent with the due process and equal protection clauses of the fourteenth amendment to impose

the entire cost of accident loss upon the industries in which the losses arise. But if, as the legislature of Washington has declared in the first section of the act, injuries in such employments have become frequent and inevitable, and if, as we have held in *New York C. R. Co.* v. *White,* the state is at liberty, notwithstanding the fourteenth amendment, to disregard questions of fault in arranging a system of compensation for such injuries, we are unable to discern any ground in natural justice or fundamental right that prevents the state from imposing the entire burden upon the industries that occasion the losses. The act in effect puts these hazardous occupations in the category of dangerous agencies, and requires that the losses shall be reckoned as a part of the cost of the industry, just like the pay-roll, the repair account, or any other item of cost. The plan of assessment insurance is closely followed, and none more just has been suggested as a means of distributing the risk and burden of losses that inevitably must occur, in spite of any care that may be taken to prevent them.

"We are clearly of the opinion that a state, in the exercise of its power to pass such legislation as reasonably is deemed to be necessary to promote the health, safety, and general welfare of its people, may regulate the carrying on of industrial occupations that frequently and inevitably produce personal injuries and disability, with consequent loss of earning power among the men and women employed, and occasionally loss of life of those who have wives and children or other relations dependent upon them for support, and may require that these human losses shall be charged against the industry, either directly, as is done in the case of the act sustained in *New York C. R. Co.* v. *White,* 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, or by publicly administering the compensation and distributing the cost among the industries affected by means of a reasonable system of occupation taxes. The act cannot be deemed oppressive to any class of occupation, provided the scale of compensation is reasonable, unless the loss of human life and

limb is found in experience to be so great that, if charged to the industry, it leaves no sufficient margin for reasonable profits. But certainly, if any industry involves so great a human wastage as to leave no fair profit beyond it, the state is at liberty, in the interest of the safety and welfare of its people, to prohibit such an industry altogether."

The Supreme Court of Washington, in *State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. n. s. 466, held a compulsory insurance act to be constitutional.

But we think there is another and very excellent theory upon which the law may be held to be constitutional, namely, that the money required to be paid under the act by the counties of the state goes for a public purpose which is a legitimate charge upon the people and the state and the subdivisions thereof.

The case of *State ex rel. Goodwin* v. *Nelson County,* 1 N. D. 88, 45 N. W. 33, 8 L. R. A. 283, 26 Am. St. Rep. 609, was one in which the constitutionality of an act was involved which provided that the counties of the state might issue bonds for the purpose of raising money to purchase seed grain for farmers who were unable to purchase it for themselves. We quote therefrom as follows:

"The stubborn fact exists that a class of citizens, numbered by many thousands, is in such present straits, from poverty, that unless succored by come comprehensive measure of relief they will become a public burden, in other words, paupers, dependent upon counties where they reside for support. It is to avert such a widespread disaster that the seed grain statute was enacted, and it should be interpreted in the light of the public danger which was the occasion of its passage. 'The support of paupers, and the giving of assistance to those who by reason of age, infirmity, or disability are likely to become such, is, by the practice of the common consent of civilized countries, a public purpose.' (Cooley, Taxn., 2d ed. pp. 124, 125.) 'The relief of the poor—the care of those who are unable to care for themselves—is among the

unquestioned objects of public duty.' (Opinion of Brewer, J., in *State* v. *Osawkee Twp.*, 14 Kan. 424, 19 Am. Rep. 99.)"

See, also, *Matter of Jensen*, 44 App. Div. 509, 60 N. Y. Supp. 933; *Exempt Firemen's Benev. Fund* v. *Roome*, 93 N. Y. 313, 45 Am. Rep. 217.

It was said in *Charlotte, etc., Railroad* v. *Gibbs*, 142 U. S. 390, 12 Sup. Ct. 255, 35 L. Ed. 1051:

"Where the interest of the public and its individuals are blended in any work or service imposed by law, whether the cost shall be thrown entirely upon the individuals or upon the state or be apportioned between them is a matter of legislative direction."

3. Counsel for appellant also contend that there are no funds in the county treasury available for the payment of the demand pleaded in the complaint. As to this, we need only say that, if we were to concede that such a state of facts would constitute a good defense (which we do not), there is nothing upon which to base such a contention, since there is no answer on file pleading such facts.

4. It is next contended that the act in question is void because it is discriminatory and is not of general and uniform operation. As said in *Ex Parte Pittman*, 31 Nev. 43, 99 Pac. 700, 22 L. R. A. n. s. 266, 20 Ann. Cas. 1319:

"This court has repeatedly held that the legislature may enact laws which apply only to certain classes, if the basis for the classification is reasonable."

In the case of *Gulf R. R. Co.* v. *Ellis*, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, the Supreme Court of the United States said:

"It is not within the scope of the fourteenth amendment to withhold from the states the power of classification, and that if the law deals alike with all of a certain class, it is not obnoxious to the charge of a denial of equal protection."

Is the classification reasonable? We think it is. It

is not only within the power, but, as we have shown, it is the duty of the county and state to provide for its indigent, and to care for those who are unable to care for themselves or who are likely to become dependent upon public charity.

If there is any virtue in the old adage that an ounce of prevention is worth a pound of cure, was it not a reasonable exercise of discretion on the part of the legislature to impose upon the counties the duty of contributing to a fund which can be drawn upon to prevent those injured in its employ from becoming paupers? We think it was.

Perceiving no prejudicial error, it is ordered that the judgment be affirmed.

McCARRAN, C. J., concurring:

I concur.

In my judgment, the one question most vital here is that which refers to the constitutional provision (sec. 17, art. 4):

"Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be fully expressed in the title."

The title of our workmen's compensation act is thus couched:

"An act relating to the compensation of injured workmen in the industries of this state and the compensation to their dependents where such injuries result in death, creating an industrial insurance commission, providing for the creation and disbursement of funds for the compensation and care of workmen injured in the course of employment, and defining and regulating the liability of employers to their employees; and repealing all acts and parts of acts in conflict with this act."

Subdivision b of section 1 of the act provides:

"Where the state, county, municipal corporation, school district, cities under special charter or commission form of government is the employer, the limitations

of two employees shall not apply, and as to such employees and employers thereof the rights and remedies as by this act provided to pay compensation for personal injury sustained by such employees arising out of and in the course of the employment shall be exclusive, compulsory and obligatory."

As to this section the appellant county contends that, inasmuch as a county is not an "industry," the title of the act is not sufficiently broad to embrace counties within its scope and operation.

Following the general proposition that the provision of the constitution here invoked should be liberally construed (*State* v. *Ah Sam,* 15 Nev. 27; *McBride* v. *Griswold,* 38 Nev. 56, 146 Pac. 756; *First National Bank* v. *Nye County,* 38 Nev. 123, 145 Pac. 932, Ann. Cas. 1917C, 1195), I am of the opinion that the general language of the title is sufficient to contemplate and give notice of the substance of subdivision b of section 1. The title declares that the act is, among other things, one "defining and regulating liability of employers to their employees."

Unquestionably the county is an employer of workmen. In my judgment, the spirit, as well as the letter, of the whole act manifests an intention to provide for a systematic arrangement for compensation for injured or afflicted workmen in whatever capacity such might be employed and to provide that where, as in counties and municipalities, the state is sovereign, such arrangement should be compulsory. This is but following out the fundamental idea, basic to all compensation acts; *i. e.,* that the industry or employment which requires human agency for its operation should look to the care and upkeep of that agency, no less than to other elements of efficiency.

Again appellant urges that, as counties are not liable for tortious actions this statute imposes a compulsory burden which was not formerly in existence. This contention rests on the theory that workmen's compensation

laws are enacted to meet the rule of the employers' liability for injury to employees. The premise is fallacious. The proper theory, and that on which the original Bismarckian compensation acts were founded, and that which appears as the spirit underlying all such laws subsequently created, is rather that the thing which requires human labor and consumes human energy in its operation shall bear an equitable share by way of compensation to those or the dependents of those who are deprived of the fruits of their labor, where such deprivation grows out of or is sustained in the course of employment.