---

## TIRRE v. BUSH TERMINAL CO.

(Supreme Court, Appellate Division, Third Department. May 3, 1916.)

1. MASTER AND SERVANT &#9758;417(7)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—FINDINGS OF COMMISSION.

   Where there was evidence to warrant it a finding of fact by the Industrial Commission, in a proceeding under the Workmen's Compensation Law (Consol. Laws, c. 67), is conclusive on appeal.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &#9758; 417(7).]

2. MASTER AND SERVANT &#9758;405(4)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—EVIDENCE.

   In a proceeding to recover under the Workmen's Compensation Law for the death of a servant, evidence *held* to warrant a finding that the servant accidentally met his death while in the course of his employment.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &#9758; 405(4).]

3. MASTER AND SERVANT &#9758;405(5)—WORKMEN'S COMPENSATION ACT—PROCEEDINGS—EVIDENCE.

   Evidence *held* insufficient to justify a finding that the claimant, deceased's mother, was a dependent so as to be entitled to compensation under the Workmen's Compensation Law, § 16, subd. 4, which makes dependency a condition to right to compensation.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &#9758; 405(5).]

4. MASTER AND SERVANT &#9758;414—WORKMEN'S COMPENSATION LAW—DUTY OF OFFICERS.

   As it is the duty of a deputy commission in charge of a hearing under the Workmen's Compensation Law to do justice between the parties, an award should not be made on flimsy evidence, where it appeared by adjournment sufficient evidence of the matter in controversy could be secured.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &#9758; 414.]

5. MASTER AND SERVANT &#9758;386(1)—WORKMEN'S COMPENSATION LAW—FUNERAL EXPENSES.

   Under the Workmen's Compensation Law, allowing a benefit for reasonable funeral expenses not exceeding $100, no award for services rendered

by a relative of the deceased in connection with his funeral can be made, it not appearing that such person expended any moneys.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☜ 386(1).]

6. APPEAL AND ERROR ☜662(1)—RECORD—CONCLUSIVENESS.

The record on appeal is conclusive of the proceedings below, this being particularly true where counsel signs a stipulation settling the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2850; Dec. Dig. ☜662(1).]

Appeal from State Industrial Commission.

Proceedings by Meta A. Tirre, mother, for compensation under the Workmen's Compensation Act for the death of August Tirre against the Bush Terminal Company. From an award made to the claimant and another, defendant appeals. Reversed and remanded to the Industrial Commission.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Cullen & Dykman, of Brooklyn (Jackson A. Dykman, of Brooklyn, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Deputy Atty. Gen., of counsel), for State Industrial Commission.

William Kronenwett, of New York City, for respondent.

LYON, J. The decision of the State Industrial Commission awarded to Meta A. Tirre, the mother of August Tirre, deceased, $2.10 weekly during dependency, and to Eiber Staak, the brother-in-law of deceased, $100 for his services in the matter of the funeral of deceased. The appellant complains of each of the above-mentioned awards upon the ground that the evidence was insufficient to justify the finding of the Commission that the deceased came to his death by reason of a personal injury which arose out of his employment, and also upon the ground that the dependency of the claimant was not shown, nor the right of Eiber Staak to the award made to him.

[1, 2] August Tirre was a floatman employed by the appellant, which operated a terminal at Brooklyn, N. Y., and in the prosecution of its business transported floats, carrying cars, between its terminal and the various termini of the railroads along New York Harbor. It was the duty of a floatman to take records of the cars upon the float; to see that the cars were properly charged up; that the brakes were applied and placed under the wheels; and that the tugboats were properly tied. The floatman was subject to orders from the tugboat when the float was being transferred. At midnight of July 24, 1915, the deceased arrived at the terminal of appellant on float 31 from the Lehigh Valley railroad terminus at Jersey City. Thereupon he was directed by the bridgeman, who was his superior, to take his three lamps and other portions of his gear and go aboard float 6 then at the pier, which was loaded with cars, and to stand by until the tug which had brought float 31 over should return to take float 6 to the bridge, where the cars which were upon the float would be run upon railroad tracks of the terminal system and thence to the various points of ultimate

destination. The deceased was not seen alive subsequent to the giving of such directions to him by the bridgeman. That the deceased followed such directions and went upon float 6 is proven by the fact that about 20 minutes later, when the tug came to take the float to the bridge, the lanterns and gear of the deceased were upon the float. Two or three days later the drowned body of the deceased was found floating in the slip. While the precise cause of deceased getting into the water is left to conjecture, the evidence was sufficient to fairly make the question as to whether it arose out of the employment one of fact for the Commission. That the death was accidental, and that it occurred in the course of his employment while the deceased was doing his regular work, is admitted by the employer in its first notice of injury. That the deceased may have slipped and fallen from the float while inspecting the manner in which the car brakes had been left, or in examining to see that the lines by which the float was stayed to the pier were free is not improbable. The doing of each of these acts was in the line of his duty. He was doubtless ignorant of the manner in which the brakes and the lines were, as he had just arrived at the pier, while float 6 had been there for five or six hours. It was a matter of ordinary prudence for the deceased to make such inspections in order that he might be assured that when the tug had been attached to the float he might be able, while standing upon the float, to swing the lines off the pier posts, which it would then be his duty to do, and might also be assured that the cars were so stayed upon the float that they would remain there while the float was being moved. The performance of these or other duties which would take him about the float was doubtless what suggested to the bridgeman the testimony that deceased might have fallen and hit his head against the pier. It is also to be noticed that the toilets were upon the pier and tugs, and none upon the floats. The theory of suicide finds no support in the evidence, and is excluded by the concession that the death was accidental. We think the question as to whether the death arose out of the employment was fairly one of fact, and that the finding of the Commission in that regard was a reasonable inference from the proofs. The finding of the Commission is therefore conclusive upon this appeal.

[3, 4] The second question which arises is whether the Commission was justified in finding that the mother of deceased was dependent upon him. "Dependent," as used in the Compensation Act, means one who looks to another for support or help. Jackson v. Erie R. Co., 86 N. J. Law, 550, 91 Atl. 1035. It is not necessary that the dependency be total in order to entitle the dependent to the benefit of the statute. Walz v. Holbrook, 170 App. Div. 6, 155 N. Y. Supp. 703. The statute makes dependency at the time of the death a condition for making an award to a parent. Subdivision 4, § 16, Workmen's Compensation Law. It was held in the case of Main Colliery Co. v. Davies, 2 W. C. C. 108, that the mere fact that a father receives money from a son and expends it is not alone sufficient to establish dependency. The evidence as to dependency is, at best, very meager. It consists solely of hearsay testimony of Eiber Staak, the brother-in-law of the deceased, and the son-in-law of the claimant. Concisely stated, this tes-

timony is that the witness had been told by the deceased that from time to time he had sent money to his mother, who lived in Germany. but in what amounts, or how often, the deceased did not tell the witness. Witness could not tell exactly when or how often deceased had told him of sending money, and did not know when he last told him, the date of which might be important as bearing upon the question as to whether the mother might be presumed to be still living, nor how many times he had told him, but that they worked together, and he had told him "lots of times"; that he could not exactly remember the words his brother-in-law used in telling him. The witness also testified that he and his wife, Lena Staak, sister of deceased, had never talked over sending her mother money; that he did not know whether his wife sent her mother money, that "she might do so on the quiet"; and also:

"Q. Didn't your wife often tell you that he was sending money home? A. Of course, she got letters, and in the letter her mother stated that she received the money from him, and that she was pleased to receive it, but about these conversations, I forget about it."

The only other statement or suggestion to be anywhere found in the record relating to the dependency of the mother, other than is found in the findings of the Commission and the remarks of claimant's attorney, is found in the unverified claim to the employer for compensation, of date August 10, 1915, signed by said Lena Staak, stating that, acting for the principal dependent of deceased, the claim was presented on behalf of deceased's mother in Germany. The record will be searched in vain for any evidence confirmatory of the claim of actual dependency of the mother. Even the hearsay testimony of the son-in-law contains no statement that the moneys were, in whole or in part, necessary for the support of the mother, or were sent for that purpose. They may have been sent in discharge of an indebtedness. For aught that appears these indefinite amounts, sent at uncertain times, may have been gifts from the son to the mother. The statement of the mother in the letter that she was pleased to receive it would properly apply to the smallest present received by the mother from her son in America. Apparently the daughter and the son-in-law did not consider the claimant in need, as apparently they never sent her anything. The daughter who made the claim might be presumed to know if the mother were still living, and, if so, as to her financial circumstances. Notwithstanding this fact, and that the daughter, who had given her address upon the said claim signed by her, as Columbus avenue, New York City, was apparently the only means readily available of establishing these vital facts, so far as the record indicates she was not called as a witness, nor any excuse given for her absence, excepting that stated by her husband, who simply said she could not come.

The deputy commissioner in charge of the hearing represented, not only the employer, but the employé as well. It was his duty to see in justice to both that all the evidence was brought before the Commission which was readily available and necessary in order to reach an

intelligent and just conclusion. To this end we think that the testimony of the daughter, who resided in the city where the hearing was had, should have been required by means of an adjournment of the hearing if necessary, instead of the findings of dependency being based, as the record would indicate, solely upon hearsay and insufficient testimony of the most flimsy character. The case should therefore be sent back to the Commission, to the end that the testimony of the daughter and of any other witnesses may be taken as to the existence and dependency of the mother.

[5, 6] Lastly, complaint is made, and justly, too, we think, of the award to Eiber Staak of the sum of $100 "for his services in the matter of the funeral and burial" of deceased. The only death benefit allowable under the Compensation Law for the funeral and burial is: "1. Reasonable funeral expenses not exceeding one hundred dollars." There is no provision of the statute which justifies an allowance for services in connection with the funeral and burial. There is nothing whatever in the record indicating that Eiber Staak had paid or had become liable for the payment of any part of any funeral expenses, or had ever made any claim to that effect. In fact, in the whole record, there is not a word relating to the subject, otherwise than as contained in the finding. Upon the rehearing the Commission can also take such evidence as may be presented by any person interested in an award relating to funeral expenses. We have not overlooked the statement in the brief of the claimant that there were proofs made before the Commission which are omitted from the record and which fully justify making the awards. However, there is nothing in the record suggesting that the Commission had any proofs before it, or acted upon any evidence, other than that contained in the record. The claimant's attorney must have been aware that the appellate court must be governed by the record. If he had considered that he had reason to complain of an insufficient record, he should have caused the record to be corrected. The remedy was readily available to him. Not only has he not seen fit to have the alleged missing proofs supplied, but his name appears at the end of the stipulation settling the case, stating that the record on appeal contains all the evidence. In view of this, it is certainly not for this court to assume that there was other evidence under which making the awards was justified.

The awards of the Commission must be reversed, and the proceeding sent back to the Commission for the taking of further evidence, as above suggested, and for the further action of the Commission. All concur.