Venuto v. Carter Lake Club.

---

ANTONIO VENUTO, APPELLANT, v. CARTER LAKE CLUB ET AL., APPELLEES.

FILED JUNE 29, 1920. No. 21464.

1. **Master and Servant: WORKMEN'S COMPENSATION ACT: DEPENDENT.** Evidence examined and *held* to establish that an aged mother in poor circumstances, residing in Italy, whose children lived in this country, and to whom the deceased had been sending periodical sums of money from his wages for her support, was entitled to compensation as a dependent under the workmen's compensation law.

2. ———: ———: ESTOPPEL. Where an insurer issues a policy to insure employees of a Nebraska corporation, which policy recites

that it is issued under the Nebraska workingmen's compensation act, and the place of business or occupation is "south side of Carter Lake adjacent to Omaha, Neb., consisting of 55 acres more or less," and it accepts and retains the premium money, it is estopped to deny that it insured against accidents to employees of the corporation while at work upon the premises described upon the plea that such premises were in the state of Iowa, and it did not insure against accidents not occurring within the state of Nebraska.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Reversed.*

*Anson H. Bigelow,* for appellant.

*Carl E. Herring* and *Brome & Ramsey, contra.*

LETTON, J.

Frank Musco, a laborer, was killed by an accident arising out of and in the course of his employment with the Carter Lake Club, a Nebraska corporation. An action was brought against the club and the Georgia Casualty Company, the insurer, in the name of the administrator of the deceased, and afterwards the Italian vice consul was substituted as plaintiff in the petition, alleging that the only person dependent on deceased was his mother, an alien, who resides in Italy. The court found that under the evidence the claimant was not a dependent within the meaning of the compensation act, and reserved decision upon the other issues. Plaintiff appeals.

When Musco died he left a mother, stepfather, and two brothers surviving him. On January 26, 1916, and at other times, deceased purchased money orders in Omaha, payable to his mother, amounting in all to $101 in United States money, receipts for which were introduced in evidence. The deceased was the only unmarried son; he was about 22 years of age when he was killed. The other two brothers lived in Omaha, are both married, and have children. One brother testifies that the mother lived in Certino, Italy; that he could not support her on account of having a family of his

own to support. He testifies that her husband had left
her years ago; that she was in need of assistance; and
that he sent her a little money whenever he could, but
he was very indefinite as to the intervals of time be-
tween remittances. It is admitted that the other brother
will testify that he has not contributed anything to the
support of the mother. A witness testified that Musco
had procured him to write letters home inclosing the
money orders, and that he had told the witness he had
been supporting his mother; that her second husband
did not do so; and that he was trying to save enough
money to bring her to this country to keep house for
him.

In *Victor Chemical Works v. Industrial Board*, 274
Ill. 11, 23, a brother of the deceased testified that the
father and mother were living in Italy; that the de-
ceased contributed to the support of the family prior
to his death; that he had seen the receipt for a money
order for $40, which the deceased showed to him. An-
other witness testified that he knew the deceased in
Italy, and knew him when he arrived in this country;
that he assisted him as interpreter in procuring a
money order, which was sent to the father. Another
witness testified to the same effect. "There was other
evidence, consisting of declarations of the deceased at
the time he sent the money to his father and his purpose
in sending it, and that his parents depended upon him
for support, which was objected to, and which objections
should have been sustained." After stating the neces-
sity for competent and legal evidence, the court held
that there was sufficient competent evidence to sustain
the finding of the industrial board that the deceased
left parents, and that he had within five years con-
tributed to their support. The evidence in the case at
bar is stronger than the evidence in that case, even
after disregarding the declarations of the deceased,
which were incompetent as hearsay testimony.

In *Tirre v. Bush Terminal Co.*, 158 N. Y. Supp. 883, it was held that the evidence as to dependency was insufficient, but the court intimated that the claimant daughter, who lived in New York, might be presumed to know if the mother was still living, and, if so, as to her financial circumstances, and since no explanation was made as to why she did not testify at the hearing, and the findings of dependency were based solely upon hearsay and insufficient testimony, the case was sent back to the commission, to the end that her testimony and that of any other witnesses might be taken as to the existence and dependency of the mother.

We are satisfied that there is sufficient evidence in this record to justify a holding that the mother is dependent. The facts that the brother in Omaha had heard from her by letters at intervals for nearly 20 years, that it was a matter of family knowledge that the stepfather had deserted her, and that she was in poor circumstances, and the positive and undisputed evidence that the deceased and his brother had been sending her money at intervals for the purpose of her support, in connection with the fact that the brother testified that the deceased was not indebted to his mother, constitute, in the absence of any evidence to the contrary, sufficient reason to hold that the mother was dependent upon the deceased. The case does not fall within the rule that where the judgment of the trial court is based upon conflicting testimony, and there is sufficient competent evidence to sustain the verdict, it will not be disturbed unless clearly wrong, because the evidence here is undisputed, and part of it is documentary. We are of the opinion that the finding of the district court upon the issues of support and dependency should be set aside.

The defense is made by the casualty company that the defendant was employed upon the grounds of the Carter Lake Club, in the state of Iowa; that the Nebraska workmen's compensation act has no applica-

tion; that the policy only covers losses under the Nebraska act, and it is not authorized to insure, and did not insure, injuries to employees under the Iowa workmen's compensation act. This defense and the reply pleading estoppel were not passed upon by the trial court.

The question whether workmen's compensation acts have extraterritorial operation is one as to which the courts are divided. The question very largely depends upon the construction given to the statute of each particular state. We find it unnecessary to now determine the question of extraterritoriality, and are the more reluctant to do so on account of the fact that this issue has been briefly argued only by the defendant casualty company. Neither in the petition nor in the answer of the employer is there any allegation that the deceased was employed to work in Iowa, or that he was injured in that state. No such issue is raised. So far as the answer of the employer is concerned, if the facts are established that the accident causing the death of Musco arose out of and in the course of his employment, and his mother was a dependent, the plaintiff is entitled to a judgment against the Carter Lake Club. Only in the answer of the casualty company is it alleged that the deceased was employed in Iowa and was killed in that state. A cross-petition against the casualty company and a reply to the answer of the casualty company were filed by the employer, and both in the cross-petition and in the reply facts are pleaded as constituting an estoppel against the casualty company to defend upon the ground that it is not liable because the policy was issued to indemnify against liability under the Nebraska act, and the injury occurred in Iowa. These facts, in substance, are as follows: That at the time the insurance was solicited the club was a Nebraska corporation, with its principal place of business in Omaha, but operating a private club for corporate members, on the south side

of Carter Lake adjacent to Omaha; that the insurance
company maintained an agency in Omaha, and has been
engaged in this state in soliciting and obtaining in-
surance risks under the workmen's compensation law;
that the casualty company issued its policy pursuant to
the provisions of the laws of Nebraska, for which
policy the club paid the premium demanded; that the
policy was delivered, insuring against any loss arising
under or by virtue of said act, from January 9, 1916, to
January 9, 1917. A copy of the policy is attached. This
recites the name of the club, its address, specifies the
place where the occupation or business is to be carried
on as "south side of Carter Lake adjacent to Omaha,
Neb., consisting of 55 acres more or less," and the
kind of trade, business, profession, or occupation as a
"private club for various corporate members." "Es-
timated pay roll for the policy period" is named as
$3,000, and "premium rate per $100 of pay roll" as $75.

The casualty company issued the policy and accepted
and retained the premium to insure the club from lia-
bility for loss or damage to its employees while working
upon the 55 acres of land lying upon the "south side of
Carter Lake adjacent to Omaha, Neb." It is a geo-
graphical fact, of which the court is required to take
judicial notice, that, while the Missouri river consti-
tutes in the main the boundary line between the states
of Iowa and Nebraska, in occasional localities the
river has changed its channel, and that the present
boundary line now lies at varying distances to the west
of the present channel. Carter Lake is in the environs
of Omaha. The fact as to the location of the 55-acre
tract on this side of the Missouri river must have been
known to the agents of the casualty company. If it
was not its intention to insure the employees upon this
55-acre tract, then the insurance company would be
guilty of accepting a premium when it knew that no
liability could accrue under the policy. Such a course
of conduct cannot be upheld, and we are of the opinion

Oakes v. Omaha & C. B. Street R. Co.

that, having accepted the premium and issued the policy to insure the employees of the club, upon its grounds adjacent to Omaha, it cannot now claim that the policy is practically void and of no effect.

What has been said in this connection is really anticipatory, and is based upon the allegations of the pleadings with the view of avoiding another appeal upon this point. For the foregoing reasons, the judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED.

ALDRICH, J., not sitting.

FLANSBURG, J., dissents.