[No. 2527]

# HILMA DAHLQUIST, RESPONDENT, *v.* NEVADA INDUSTRIAL COMMISSION, APPELLANT.

[206 Pac. 197 ; 207 Pac. 1104]

1. MASTER AND SERVANT—WOMAN MARRYING EMPLOYEE AFTER INJURY HELD NOT A "DEPENDENT" WITHIN COMPENSATION ACT.

Under Workmen's Compensation Act, sec. 26, providing that dependency shall be determined as of the date of the accident to the employee, irrespective of any subsequent change in conditions, a woman who married a man on the day after he was injured would not be a "dependent" and entitled to the compensation provided in section 25.

2. MARRIAGE—EVIDENCE HELD TO ESTABLISH COMMON-LAW MARRIAGE.

Evidence that deceased and plaintiff lived together as man and wife, that deceased had introduced plaintiff as his wife, and that people who knew them understood that they were man and wife, *held* sufficient to prove common-law marriage.

3. MARRIAGE—ACTS OF HUSBAND HELD NOT TO OVERCOME POSITIVE EVIDENCE OF COMMON-LAW MARRIAGE.

When there is positive evidence of the existence of a common-law marriage at a certain date, the fact that the parties at a later date entered into a ceremonial marriage, and that the husband stated, when seeking employment, that he was unmarried, does not disprove the existence of the common-law marriage.

## ON PETITION FOR REHEARING

1. MASTER AND SERVANT—COMPENSATION SUIT AGAINST INDUSTRIAL COMMISSION ORIGINAL PROCEEDING NOT TRIED "DE NOVO" ON ISSUE RELIED ON BEFORE COMMISSION.

Since there is no appeal from a ruling of the industrial commission, but the suit for compensation brought against the commission in the district court is an original suit, plaintiff can rely in the district court on a common-law marriage with the deceased employee, though her claim before the commission was based on a ceremonial marriage, there being in such case no trial "de novo" in the technical sense, which signifies that there had already been a trial before some tribunal, and that the trial de novo was not before a court upon an original hearing, but on appeal.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Action by Hilma Dahlquist against the Nevada Industrial Commission. Judgment for plaintiff, and defendant appeals. **Affirmed. Petition for rehearing denied.**

*Leonard B. Fowler,* Attorney-General, and *Robert Richards,* Deputy Attorney-General, for Appellant:

Respondent married the deceased the day after the accident which resulted in his death. She cannot recover on the ground that she is the statutory wife of decedent, having become such after the accident or injury, and before the commission she relied exclusively upon her rights, if any, flowing from said statutory marriage; and the record shows that she alleged through her attorney that she had other evidence or information, which she was given full and fair opportunity to offer, but of which she did not avail herself. "The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee: 1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury. * * * Questions as to who constitute dependents' * * * shall be determined as of the date of the accident or injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions." Workmen's Comp. Act, sec. 26; Kuetbach v. Ind. Comm., 166 Wis. 378, 165 N. W. 302.

Respondent has impliedly abandoned her claim to compensation based upon the theory and ground that she is the statutory wife. At the trial she adduced evidence, and no other evidence, attempting to prove that she was the common-law wife of the deceased at the time of the injury and for two years prior thereto, without ever having submitted such evidence to the commission, having had an opportunity so to do. The commission had the jurisdictional right in the first instance to have presented to it and to pass upon the evidence, if any, relating to the common-law marriage, as the burden to sustain respondent's claim before the commission was upon her. She cannot be heard to complain if her case was rightly decided against her by the commission upon the sole and only ground advanced before it. Respondent will not be permitted in law to

advance in this court an entirely new and independent ground and theory for recovery, especially where she has refused to permit the commission to pass thereon. There is no issue so far as the evidence is concerned, it being absolute and conclusive in favor of the appellant. Any attempt to contradict the evidence could not be successful, it being in writing, and emanating from respondent and her counsel. "An award of compensation cannot be sustained without proof of the essential prerequisite imposed by the statute. * * * Except in those cases in which dependency is conclusively presumed, the burden of proof of dependency is on a person claiming as such." Corpus Juris, Workmen's Comp. Acts, sec. 112, p. 115; Englebretson v. Ind. Acc. Comm., 151 Pac. 421; Employers v. Ind. Acc. Comm., 151 Pac. 423; Tirre v. Bush T. Co., 158 N. Y. Supp. 883; Int. H. Co. v. Ind. Comm., 147 N. W. 53; In Re Fierro, 111 N. E. 998. There was no legal proof before the commission that the deceased and the claimant at the time of the accident and prior thereto were husband and wife by virtue of statute or common law, and the commission was without power to award compensation therefor.

May a claimant put his case before the commission, deliberately state it in part, or erroneously, get an expected rejection, and then go to court and present his case properly and get judgment, thus substituting the courts for the commission? If he may do so in any case, he may never do so in matters of jurisdiction, and the so-called common-law marriage was a matter of jurisdiction. "As a rule, plaintiff cannot set up for the first time on appeal a cause of action or ground of recovery not relied upon or brought up in the lower court." 3 C. J. 694. "The parties are restricted to the theory on which the cause was prosecuted or defended in the court below." 3 C. J. 718; People v. Tax Comm., 136 N. Y. App. Div. 156; Union C. Assn. v. Kansas, 252 Mo. 508; Buck v. Canty, 121 Pac. 929.

The evidence shows no common-law marriage. The

parties cohabited, but not on any agreement then and there to become husband and wife. The evidence shows a meretricious relation in its inception, which is presumed to continue; a statutory marriage, but no common-law marriage ever subsisting between the respondent and the deceased. Marriage, Essentials at Common Law, 26 Cyc. 836–840.

*Harry Dunseath* and *R. M. Hardy,* for Respondent:

In determining "questions as to who constitute dependents, and the extent of their dependency," the laws in all the states do not, in the remotest degree, refer to or include the surviving wife, dependent husband, or children under eighteen years of age, they being in a class "conclusively presumed" to be dependent from the date of the death from accident of the deceased employee. "In all other cases" only shall dependency be determined in accordance with the facts existing at the date of the injury. Crockett v. International Ry. Co., 176 App. Div. 45, 162 N. Y. Supp. 357; Radley v. Le Ray Paper Co., 214 N. Y. 32, 108 S. E. 65, L. R. A. 1915E, 1199. A widow who was married to her husband after he received the injury causing his death may maintain an action. They "had been living together for some seven years, since the death of his first wife. * * * After the accident they were married. Whether, as was urged by the learned counsel for defendant, the marriage took place to enable the plaintiff to bring suit against the defendant company, or, as is more charitable to suppose, to sanction by religious ceremony the union which has existed for many years, * * * can only be a matter of conjecture. The fact remains that at the time of the death * * * plaintiff was his lawful wife and after his death was his widow. * * * This is the only condition that she is required to fulfil in order to recover." Gross v. Electric Traction Co., 36 Atl. 424.

The district court had jurisdiction. Appellant questioned this jurisdiction, but was overruled. State ex rel. Brown v. Nevada I. Comm., 40 Nev. 226.

The commission was well aware of the fact that a common-law marriage existed. For nearly two years the decedent had held respondent out to the world as his wife. The statutory marriage was performed at the urging of well-meaning friends. "A subsequent ceremonial marriage is not inconsistent with a prior common-law marriage, and it does not necessarily overcome the presumption thereof which arises from matrimonial cohabitation, the declaration and conduct of the parties, and their reputation." Betsinger v. Chapman, 88 N. Y. 488; Starr v. Peck, 1 Hill, 270. "An implied contract of marriage is as binding and effective as one expressed in words or spread upon parchment." Adgar v. Ackerman, 115 Fed. 124; Davis v. Prior, 112 Fed. 274; Maryland v. Baldwin, 112 U. S. 490; Meister v. Moore, 96 U. S. 76; 26 Cyc. 436; White v. White, 82 Cal. 427; Sharon v. Sharon, 75 Cal. 1. "The law does not require a formal introduction by the husband of the woman as his wife to each member of the social circle into which they go. It is sufficient if his conduct is such as to justify her reception in such circle as his wife." White v. White, supra.

By the Court, COLEMAN, J. :

We will refer to the parties as they were designated in the trial court.

Paragraph 1 of the complaint alleges the creation of the defendant, Nevada Industrial Commission, under and by virtue of the provisions of an act of the legislature approved March 15, 1913 (Stats. 1913, p. 137), as amended (Stats. 1915, p. 279; Stats. 1917, p. 436; Stats. 1919, p. 305). The complaint also alleges that one Alfred Dahlquist, while employed by the Tonopah Belmont Development Company, which had elected to avail itself of the terms of the act mentioned, on the 2d day of February, 1920, received injuries resulting in his death; that on or about March 1, 1918, plaintiff became the common-law wife of said Alfred Dahlquist; that thereafter, on February 3, 1920, a ceremonial marriage was entered into between them; that she had

filed with the defendant her claim for compensation under the terms of the act mentioned, had done and performed all other things required of her by said act, and that her said claim had been rejected. The complaint concludes with a prayer for relief.

An answer was filed denying the allegation of a common-law marriage, admitting that the plaintiff had filed with the defendant a claim for compensation as the widow of the deceased, but alleging that said claim was based upon a ceremonial marriage between plaintiff and Alfred Dahlquist entered into on February 3, 1920, the day following that upon which he had been injured. The answer admits the rejection of the claim, but alleges that it was rejected because it appeared from the claim itself that the marriage between plaintiff and the deceased had been entered into after the injuries had been sustained.

The action was tried to the court, which filed a written opinion, and ordered findings to be prepared favorable to the plaintiff. Judgment was rendered accordingly; hence this appeal.

1. Counsel for defendant present two contentions: First, that there was no common-law marriage; and, secondly, that the ceremonial marriage having been entered into after the injuries had been sustained by Dahlquist, plaintiff does not come within the provisions of the act. In determining the latter contention we must, of course, look to the intention of the legislature as it is expressed in the act. Counsel for plaintiff contends that she comes within the provisions of the act, and relies to sustain his position chiefly upon the case of Crockett v. International Ry. Co., 176 App. Div. 45, 162 N. Y. Supp. 357. We do not think this case is controlling. It turned upon the point that the wife, who had married the deceased after the injury, did not fall within the class designated as dependents, but that she was entitled to recover because of the legal and moral responsibility of the husband to support the wife. The New York act does not read as does ours, and hence the authority is no guide to us. Our statute provides

in express language the terms upon which a wife shall be entitled to contribution. It reads:

"SEC. 25. Every employee in the employ of an employer within the provisions of this act, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, shall be entitled to receive the following compensation:

"If the injury causes death, the compensation shall be known as a death benefit, and shall be payable in the amount and to and for the benefit of the persons following:

"1. Burial expenses, not to exceed one hundred and twenty-five ($125) dollars, in addition to the compensation payable under this act.

"2. To the widow, if there is no child, thirty per centum of the average wage of the deceased. This compensation shall be paid until her death or remarriage with two years' compensation in one sum upon remarriage.

"3. To the widower, if there is no child, thirty per centum of the average wage of the deceased, if wholly dependent for support upon the deceased employee at the time of her death. This compensation shall be paid until his death or remarriage."

Section 26 reads:

"The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee:

"1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury.  *  *  *

"Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident or injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions." Stats. 1917, c. 233.

Hence we see that, under section 25 of our statute, to be entitled to compensation, in case of the death of the injured person, the one claiming such compensation

must be a dependent as defined in section 26. By this section it is provided that a wife who has not at the time of the injury voluntarily abandoned her husband shall be conclusively presumed to be a dependent, and, in determining who constitutes a dependent, we must look to the relationship existing at the date of the accident or injury, irrespective of any subsequent change. This language is plain and unequivocal; nothing could be more clearly put. In fact, apparently through a superabundance of precaution, the legislature, after saying that the question of dependents shall be determined as of the date of the accident or injury, to reinforce that idea, and to put its expression beyond all cavil, provided that such should be the case "irrespective of any subsequent change in conditions."

In view of this unequivocal language, why should we grope around for some theory upon which to base an interpretation squarely contrary to that expressed? There is no room for interpretation of the language used. Rules of interpretation are resorted to only where doubt exists as to the idea sought to be expressed. We are confronted with no such situation. It is clear that plaintiff cannot recover because of her ceremonial marriage. This view finds support in the case of Kuetbach v. Industrial Commission, 166 Wis. 378, 165 N. W. ·302, L. R. A. 1918F, 476. Indeed, we think plaintiff's counsel must have taken this view upon the trial, since no evidence was offered by him as to the ceremonial marriage.

2. This brings us to a consideration of the case as made by the plaintiff relative to the alleged common-law marriage. It is said by defendant that no common-law marriage has been established by the evidence, the main point to sustain this contention being couched in the following statement in the brief:

"The parties cohabited, but not on any agreement then and there to become husband and wife."

This, of course, was a question of fact to be determined by the lower court. There is very little conflict

in the evidence, and it is our duty to sustain the judgment if there is sufficient competent evidence to justify it.

It appears that the plaintiff and the deceased were born in Finland, and that the former had not been in this country a great while when she met the deceased. In giving her testimony, as appears from the transcript, she was somewhat at a disadvantage in expressing herself. She testified:

That after she had known the deceased about two months " * * * he says to me it is too lonesome him living all alone. We find out that we got deep love for each other. He says, 'It is too lonesome living alone.' I say, too, I feel too lonesome without him; he say nothing on earth can separate us. * * * I say to him I got old sickly mother in old country where I always have to send little I make living to her. He says to me that can't come between us, that matter, because he is husky man and can make living for our both and little amount we can send it always in your sickly mother in the Finland. * * * After that he says to me, 'Let's go live together in this house just like the man and wife, because that only way we get enough money to buy our own home.' And I am satisfied with that. We are living together. He says, 'Now we are man and wife.' "

There is in the record evidence of several witnesses, nearly all of whom were foreign born, and evidently natives of Finland, who testified that the deceased had introduced the plaintiff to them as his wife. Several of the witnesses testified that he frequently alluded to her as "Mama," and that they understood that the parties were man and wife. With the witnesses alluded to, it is evident that "Mama" was of especial significance. The evidence shows also that the deceased and plaintiff went to live at the Argyle House, in Goldfield, some months after the alleged marriage, and that he registered as "Alfred Dahlquist and wife," and that in the circle in which the parties moved they were accepted as man and wife.

3.  Two circumstances are relied upon by the defendant to overthrow the case made by plaintiff of a common-law marriage, namely, the ceremonial marriage and the statement by the deceased when seeking employment that he was unmarried, and in case of accident that the plaintiff (naming her by her maiden name) be notified.  As to the first of these circumstances, it is very evident from the testimony of Mrs. Harrington that she was entirely responsible for the ceremonial marriage; that she talked the plaintiff into it.  Considering the fact that plaintiff is a foreigner, but little acquainted with the customs of this country, we do not think that any significance can be attached to the fact of the ceremonial marriage.  At most it may be said to have been but a precautionary step on the part of plaintiff.  Just what prompted the statement of the deceased, as contained in his application for employment, we cannot say.  However, it is but a circumstance, which could not nullify a marriage contract theretofore entered into, had there been one, and which of itself does not warrant a finding contrary to that made by the court.

Without further considering this question, we may say that the trial court heard the oral testimony, observed the demeanor of the witnesses upon the stand, and, in view of the fact that many of them were foreigners, was in a far better position than we are to determine the existence of a common-law marriage.  On the whole case, we do not feel justified in disturbing the finding of the court.

4.  The learned attorney-general criticizes certain language of the trial court as expressed in his written opinion:

"I consider these facts incidents of the situation that arises under our law permitting common-law marriage, which seems very convenient.  Under it people may be married or unmarried as is most convenient.  They never need any divorce, no matter what happens.  Such a marriage would never support a prosecution for bigamy.  No doubt many common-law marriages in this

and other states simply fade away when the man takes a fancy to another woman or the woman to another man."

We agree most heartily with counsel that such is not the law. We can approve of no such standard. A marriage, whether of common-law or ceremonial character, is the consequence of a contractual relationship. In the one case it is the result of present assent, between parties capable of contracting marriage, followed by subsequent cohabitation as husband and wife, and the holding out to the world of each other as such. Such a marriage has all the binding force of a ceremonial marriage; and one who enters into such a marriage without being divorced may, during the lifetime of such · a common-law spouse, be guilty of bigamy, as was held by this court in State v. Zichfeld, 2 Nev. 304, 46 Pac. 802, 34 L. R. A. 784, 62 Am. St. Rep. 800.

We think the rights, obligations and liabilities of those entering into a common-law marriage have been clearly established by this court in the following cases: Parker v. De Bernardi, 40 Nev. 361, 164 Pac. 645; Clark v. Clark, 44 Nev. 44, 189 Pac. 676, 194 Pac. 96. However, in this case the formal findings of the court sustain the judgment, and the evidence warrants the findings.

It is said that the plaintiff should not prevail because she relied upon the ceremonial marriage before the commission, but upon the common-law marriage in the court, in view of the rule to the effect that a question not raised in the lower court will not be considered on appeal generally. 3 C. J. 694, et seq. We do not think this rule is applicable to the situation confronting us. There was, and could have been no appeal from the ruling of the commission. The action of the district court was an original proceeding in a court of record, the complaint alleging a common-law marriage, and the case being tried upon that theory. The defendant was not misled in the trial court, and, so far as we see, no substantial injustice has been done in the matter. The

reasons leading to the adoption of the rule invoked are sound, and the rule itself is a most wholesome one, but it has no application to the instant case.

The judgment is affirmed.

### ON PETITION FOR REHEARING

By the Court, COLEMAN, J.:

A very earnest petition for a rehearing has been filed. It appears that the only conclusion reached in our former opinion complained of is the last one stated in the opinion. In the petition for a rehearing counsel quote in full our views expressed on that point, and then observe:

"We declare that this question is a vital question, not in so much as its decision affects the respondent or appellant in the instant case, but because, if the quoted language is carried to its logical analysis, it is a mandate to any and all claimants to ignore the act and its requirements in establishing, or attempting to establish, jurisdictional conditions precedent before the commission prior to prosecuting an action de novo upon a rejected claim, and because, if the quoted language is not carried to its logical analysis, it leaves the commission without judicial guidance in administering the act establishing and creating it."

Counsel then ask this question:

"But does the court intend by its opinion and decision that the trial de novo does not contemplate that the jurisdictional conditions precedent provided for in the act need be fulfilled by the claimant to an award before the commission?"

We may say that we are entirely satisfied with the disposition made of the question urged upon our consideration in the petition, and would not deem it necessary to file this response to the petition but for the fact that we wish to make it clear that we do not intend to convey any idea save that definitely expressed in the opinion. We are of the opinion that the point suggested by the query quoted was not before us, and we do not understand that we decided it in our former opinion.

Upon the oral argument we asked counsel the question:

"Is there anything in the act which provides that when a claim is presented and a hearing had (before the commission) and its determination entered, as to the method of procedure thereafter?"

To which counsel replied:

"No more than the blanket statement, and the Brown case, that the commission may sue and be sued."

Counsel seem to base their entire argument upon the theory that the case in the district court, wherein the judgment was rendered which was appealed to this court, was tried by that court de novo. Since the term "de novo" means anew, it may be that, literally speaking, the trial in that court was de novo; but in legal parlance the term "de novo" signifies that there had already been a trial before some tribunal, and that the trial de novo was not before a court upon an original hearing, but upon appeal, whereas this case was originally instituted in the district court. We are sure that learned counsel are well aware of the terms of section 1, art. 6, of our constitution, and of the holding in Ormsby County v. Kearney, 37 Nev. 314, 142 Pac. 803, and followed in V. L. & S. Co. v. District Court, 42 Nev. 1, 171 Pac. 166, wherein it was held that the legislature had no authority to create a tribunal with judicial powers, other than as provided in the section of the constitution mentioned, from which an appeal might be taken to the district court in this state.

We have not been cited to any provision of the Workmen's Compensation Act (Stats. 1913, c. 111, as amended by Stats. 1915, c. 190, Stats. 1917, c. 233, and Stats. 1919, c. 176) authorizing an appeal from the commission to the court, nor do we understand that it is contended that there can be such an appeal. If there can be no such appeal, we are at a loss to know how there can be a trial de novo before that court of a matter considered by the commission. There is absolutely no connection between the proceeding before the commission and that before this court, nor, as appears from the answer of counsel to the query propounded during

the oral argument, is there any contention that there is. Counsel relies upon the following authorities to sustain their position: Englebretson v. Ind. Acc. Comm., 170 Cal. 793, 151 Pac. 421; Employers v. Ind. Acc. Comm., 170 Cal. 800, 151 Pac. 423; Tirre v. Bush T. Co., 172 App. Div. 386, 158 N. Y. Supp. 883; Int. H. Co. v. Ind. Comm., 157 Wis. 167, 147 N. W. 53, Ann. Cas. 1916B, 330; In Re Fierro, 223 Mass. 378, 111 N. E. 957. We do not think any of these cases is in point. It appears that the first case mentioned was a proceeding in certiorari "under the provisions of the Workmen's Compensation Act." Just how it can be authority in this case we are unable to see. The second case was before the court, as appears from the preliminary statement, on a writ of review. We are not informed as to the authority of the court in such matters, but it is very evident that the situation was entirely unlike that presented here. The case of Tirre v. Bush T. Co., supra, was one in which an appeal was taken from the award of the commission. Such is not the case before us. The case of Int. H. Co. v. Ind. Comm., supra, was one which was on review by the court pursuant to express legislative authority, and the last case mentioned was before the court on appeal. In each of these cases it appears that the court was authorized to review the proceedings had before the commission. In the case before us the court reviewed nothing; it merely determined a suit commenced before it. There was no connection between the proceedings before the commission and the court proceeding. We fail to see wherein any of the cases mentioned is an authority in point.

The petition is denied.