NEVADA INDUSTRIAL COMMISSION; JOHN R. REISER, CHAIRMAN, NEVADA INDUSTRIAL COMMISSION; CLAUDE EVANS, COMMISSIONER REPRESENTING LABOR, NEVADA INDUSTRIAL COMMISSION; JAMES LORIGAN, COMMISSIONER REPRESENTING INDUSTRY, NEVADA INDUSTRIAL COMMISSION; AND RICHARD BORTOLIN, APPELLANTS, v. LUTHER REESE, DANIEL G. MAHONEY, AND MICHAEL E. AUSICH, RESPONDENTS.

No. 7901

March 9, 1977                    560 P.2d 1352

*Cooke, Roberts & Reese, Reno;* and *William J. Crowell* and *Riley M. Beckett,* Carson City, for Appellants Nevada Industrial Commission and Commissioners.

*Manoukian, Scarpello & Alling, Ltd.,* Carson City, for Appellant Bortolin.

*Rice & Goedert,* Reno, for Respondents.

**O P I N I O N**

By the Court, MOWBRAY, J.:

This is an appeal from a judgment of the district court declaring unconstitutional certain 1973 amendments to the Nevada Industrial Insurance Act.

During the 1973 Legislature, Assembly Bill No. 339 was enacted as chapter 762, Stats. Nev. 1973, at 1595–1598. This statute amended the Nevada Industrial Insurance Act, chapter 616 of NRS. Among other things, the amendment provided for the incorporation of the Nevada Administrative Procedure Act (ch. 233B of NRS) into the Nevada Industrial Insurance Act and for the establishment of an Appeals Officer, appointed by the Governor, to conduct administrative hearings in contested claims. The amendment also provided that a decision of the Appeals Officer was to constitute a "final decision" under the Nevada Administrative Procedure Act and that the record for purposes of judicial review of the decision of the Appeals Officer was limited solely to the evidence received during the hearing before the Appeals Officer. Section 6 of chapter 762 provided that no judicial proceedings could be instituted for the recovery of compensation for injury or death under the Nevada Industrial Insurance Act unless a claim for compensation had been filed in accordance with the provisions of NRS 616.500 and there had been a final decision rendered by the NIC Appeals Officer on such claim. Additionally, section 6 provided that judicial proceedings instituted by a dissatisfied claimant after a final decision would be limited to the scope of judicial review of an administrative decision, pursuant to the Nevada Administrative Procedure Act, sections 233B.130–233B.150. As a result, the decision of the NIC Appeals Officer was afforded the same status as a decision of an administrative agency under the Nevada Administrative Procedure Act. NRS 233B.140, subsections 4 and 5.[1]

The respondents, Luther Reese, Daniel G. Mahoney, and Michael E. Ausich, as dissatisfied claimants of benefits under the Nevada Industrial Insurance Act, commenced this original action in the Second Judicial District Court to challenge the constitutionality of the 1973 amendments to the Nevada Industrial Insurance Act. Appellant Richard Bortolin, in his official capacity as the NIC Appeals Officer, was named a party defendant, along with the NIC and the Commissioners, in their official capacities. The district judge, in his amended judgment filed April 22, 1974, ruled sections 4, 5, 6, 7, 8, 9, and 12 of

---

[1]The former procedure of filing a claim for industrial insurance compensation and, if dissatisfied, thereafter filing an *original* action with another full evidentiary hearing in the district court against the NIC was replaced with the administrative hearing before the Appeals Officer.

chapter 762 unconstitutional because they violated article 6, section 1, of the Nevada Constitution.[2]

Respondents predicate their argument that the amendments to the Industrial Insurance Act are unconstitutional on the principal ground that they violate the traditional separation of powers doctrine, article 3, section 1, of the Nevada Constitution[3] and the judicial power provision set forth in article 6, section 1, of the Constitution.[4]

In 1880, the Supreme Court of the United States declared in Kilbourn v. Thompson, 103 U.S. 168, 190, 191, that all powers entrusted to government are divided into executive, legislative, and judicial branches, and that it is essential to the successful working of this system that the persons entrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other. The pronouncement was predicated upon reasoning stemming from Plato and Locke. The basic doctrine had been stated by Blackstone a century before Kilbourn, in 1765:

---

[2]The amended judgment provided in part as follows:

"That Sections 4, 5, 6, 7, 8, 9, and 12 of (Chapter 762 of 1973 Statutes of Nevada, pp 1595 through 1598) are unconstitutional, void and ineffective and in violation of Section 1, Article 6, of the Constitution of Nevada on the following grounds and for the following reasons, namely:

"(1) Said sections of Chapter 762 illegally delegate to an Administrative Appeals Officer judicial powers and functions in workmens compensation cases;

"(2) Said sections of Chapter 762 illegally and effectively abolish a pre-existing, long established and long recognized judicially declared, independent original cause of action for injured complainants having a judicial dispute with the Nevada Industrial Commission;

"(3) Said sections of Chapter 762 illegally gave a right to appeal decisions of an appeals officer in workmens compensation cases when such an appeal can legally lie only from a constitutional court or tribunal in such cases."

[3]Nev. Const. art. 3, § 1:

"The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted."

[4]Nev. Const. art. 6, § 1:

"The Judicial power of this State shall be vested in a Supreme Court, District Courts, and in Justices of the Peace. The Legislature may also establish Courts for municipal purposes only in incorporated cities and towns."

"In all tyrannical governments, the supreme magistracy, or the right of both *making* and of *enforcing* the laws, is vested in one and the same man, or one and the same body of men; and wherever these two powers are united together, there can be no public liberty. . . ." 1 Blackstone Commentaries on the Laws of England 146 (Lewis's ed. 1902 at 133).

Most state constitutions, as the Nevada Constitution, contain explicit provisions having something in common with the Kilbourn statement. Nev.Const. art. 3, § 1, *supra*.

The Federal Constitution, however, contains no specific provision that the three kinds of power shall be kept separate. It goes no further than to provide separately for each of the three branches of Government: "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1. "The executive Power shall be vested in a President of the United States of America. . . ." Art. II, § 1. "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. . . ." Art. III, § 1.

The Supreme Court of the United States has held that judicial powers may be conferred upon administrative agencies. See Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381 (1940); Reconstruction Fin. Corp. v. Bankers Trust Co., 318 U.S. 163 (1943). The High Court, without disapproval, said of the Federal Trade Commission, in 1935: "To the extent that it exercises any executive function—as distinguished from executive power in the constitutional sense—it does so in the discharge and effectuation of its quasi-legislative or quasi-judicial powers, or as an agency of the legislative or judicial departments of the government." (Footnote omitted.) Humphrey's Executor v. United States, 295 U.S. 602, 628 (1935).[5]

[5]The realities of the law about separation of powers were stated by MR. JUSTICE JACKSON: ". . . They [administrative bodies] have become a veritable fourth branch of the Government, which has deranged our three-branch legal theories much as the concept of a fourth dimension unsettles our three-dimensional thinking.

"Courts have differed in assigning a place to these seemingly necessary bodies in our constitutional system. Administrative agencies have been called quasi-legislative, quasi-executive or quasi-judicial, as the occasion required, in order to validate their functions within the separation-of-powers scheme of the Constitution. The mere retreat to the qualifying 'quasi' is implicit with confession that all recognized classifications have broken down, and 'quasi' is a smooth cover which we draw over our confusion as we might use a counterpane to conceal a disordered bed." Federal Trade Comm'n v. Ruberoid Co., 343 U.S. 470, 487–488 (1952) (dissenting opinion).

Since a typical administrative agency exercises many types of power, including executive, legislative, and judicial, a strict application of the theory of separation of powers would make the very existence of such an agency unconstitutional.

While an administrative officer such as the NIC Appeals Officer cannot validly exercise purely judicial functions under article 6, section 1, or article 3, section 1, of the Nevada Constitution, we have heretofore recognized a distinction between purely judicial acts and quasi-judicial administrative acts. As a result, administrative officials can exercise administrative powers which are quasi-judicial in nature without violating the separation of powers doctrine. Provenzano v. Long, 64 Nev. 412, 427, 183 P.2d 639, 646 (1947). The NIC Appeals Officer's authority is limited to the power to conduct administrative hearings and make findings and render administrative decisions thereon. To execute these duties, it is necessary to exericse quasi-judicial powers. In Ormsby County v. Kearney, 37 Nev. 314, 346, 142 P. 803, 808 (1914), this court held that a statute which invests an administrative commission or official with administrative powers does not violate the separation of powers clause of the State Constitution, even though some of the administrative powers exercised by the official are quasi-judicial in nature. The statute upheld in Kearney created the office of State Water Engineer and empowered that official to conduct hearings, take evidence, and make decisions that determined water rights. The exercise of these quasi-judicial administrative powers by the State Water Engineer was held not violative of either article 3, section 1, or article 6, section 1, of the Nevada Constitution. The court in Kearney, in upholding the statute against an attack based on the separation of powers clause, quoted from an earlier case, Sawyer v. Dooley, 21 Nev. 390, 396, 32 P. 437, 439 (1893): "It would be impossible to administer the state government were the officers not permitted and required, in many instances, to discharge duties in their nature judicial, in that they must exercise judgment and discretion in determining the facts concerning which they are called upon to act, and in construing the laws applicable to them."

Kearney is persuasive authority for upholding the constitutional validity of the office of the NIC Appeals Officer. In both cases the statutes challenged had created an administrative position and delegated to the official in that position the power to carry out administrative duties that are quasi-judicial in nature. The duties of both officials are almost identical in that, like the State Water Engineer, the NIC Appeals Officer is granted the power to conduct hearings on contested claims,

take evidence relevant to those claims, and render final administrative decisions thereon. See also, Humboldt Land & Cattle Co. v. Sixth Judicial Dist. Court, 47 Nev. 396, 224 P. 612 (1924). In Mallatt v. Luihn, 294 P.2d 871 (Ore. 1956), the court considered the question of a legislative delegation of power which allegedly constituted a violation of the doctrine of separation of powers. The court stated, at 880: ". . . [T]he mere fact that some functions usually performed by courts are conferred upon an administrative body does not necessarily bring the legislation into conflict with the principle of the separation of powers." And in Mulhearn v. Federal Shipbuilding & Dry Dock Co., 66 A.2d 726, 731 (N.J. 1949), the Supreme Court of New Jersey ruled that the State Division of Workmen's Compensation was not a court, but was an administrative tribunal in a department that was a component part of the State executive department. In addition, the court made a distinction between administrative quasi-judicial duties of an official of the executive branch of government and purely judicial adjudication properly vested in the judicial branch of government. The court stated, at 730:

"The failure to comprehend that administrative adjudication is not judicial springs from the erroneous notion that all adjudication is judicial. This is not so and never has been so. . . . Once the obvious right of the Governor and the Legislature, each to adjudicate within his or its own proper sphere, is recognized and it is conceded that the courts are not the exclusive instrumentalities for adjudication, the true nature of the administrative adjudications, commonly termed 'quasi-judicial', becomes apparent. This term serves to characterize not the quality of the adjudication but its origin outside the judicial branch of the government."[6]

---

[6]There is a large number of jurisdictions holding constitutional administrative adjudication of workmen's compensation. Most of them hold that such a determination is not exclusively judicial in character, provided that there is the customary judicial review. See Alabam's Freight Co. v. Hunt, 242 P. 658 (Ariz. 1926); Walters v. Blackledge, 71 So.2d 433 (Miss. 1954); Utah Fuel Co. v. Industrial Comm'n, 194 P. 122 (Utah 1920); Borgnis v. Falk Co., 133 N.W. 209 (Wis. 1911). See also Ontario Mining Co. v. Industrial Comm'n, 280 P. 483 (Colo. 1929); Grant Coal Mining Co. v. Coleman, 179 N.E. 778 (Ind. 1932). Some justify their holding by characterizing the powers of the agency as "summary," thus implying the degree of judicial power is slight. See Grand Trunk Western Ry. v. Industrial Comm'n, 125 N.E. 748 (Ill. 1919); Cunningham v. Northwestern Improvement Co., 119 P. 554 (Mont. 1911). There have been bolder, more realistic rationales. The Supreme Court of Oregon has held that the power of the legislature to create courts such as the Industrial Commission is unlimited. See

We conclude, therefore, that the NIC Appeals Officer can exercise his administrative powers that are quasi-judicial in nature without violating the separation of powers doctrine. In doing so, we agree with the pronouncement of Mr. Justice Douglas in Sunshine Anthracite Coal Co. v. Adkins, *supra,* 310 U.S. 381, wherein an administrative agency was empowered by Congress to make a finding of fact whether a coal producer produced bituminous coal as defined in the Bituminous Coal Act. Justice Douglas wrote, at 400: "To hold that there was [an invalid delegation of judicial power] would be to turn back the clock on at least a half century of administrative law."

The respondents have relied heavily upon State ex rel. Brown v. Nevada Indus. Comm'n, 40 Nev. 220, 161 P. 516 (1916); Dahlquist v. Nevada Indus. Comm'n, 46 Nev. 107, 206 P. 197, 207 P. 1104 (1922); and Nevada Indus. Comm'n v. Strange, 84 Nev. 153, 437 P.2d 873 (1968), in support of their position that this court has by the holdings in those cases established the rule that an aggrieved employee who is dissatisfied with the award granted by the NIC has a right to bring an original common law action in the district court against the Commission.

Brown recognized such a right. Although the Industrial Insurance Act as it then existed created new rights, it did not restrict the employee's privilege to pursue his common law remedy. Therefore, the court properly recognized his right to sue the Commission. "If a statute which creates a right does not indicate expressly the remedy, one is implied, and resort may be had to the common law, or the general method of obtaining relief which has displaced or supplemented the common law." (Footnote omitted.) 2A Sutherland Statutory Construction, § 55.03, at 383 (C.Sands 4th ed. 1973). Dahlquist reaffirmed Brown. Since the Legislature had not negated the employee's right to pursue his common law remedy after the decision in Brown, the court properly followed its prior decision. Strange, *supra,* decided in 1968, again reaffirmed Brown and Dahlquist, and although an amendment to the Administrative Procedure Act containing the present provisions for judicial review had been passed by the 1967 Legislature, the court

Evanhoff v. State Indus. Accident Comm'n, 154 P. 106 (Ore. 1915). The Supreme Court of Washington has held that, because administrative adjudication is "necessary" to the success of the scheme, it is constitutional. "Necessary" in this context may be taken to mean that each of the group of controversies delegated to administrative adjudication is an aspect of an organic whole, best handled by a single agency. See State v. Mountain Timber Co., 135 P. 645 (Wash. 1913).

did not mention it or indicate that it was in any way applicable to the case. The reason for this was simply that the 1967 amendatory act stated, in section 13: "The provisions of this act do not apply to contested cases pending on July 1, 1967." Stats. Nev. 1967, ch. 280, § 13, at 807, 811. As indicated in the opinion, 84 Nev. at 159, 437 P.2d at 877, Strange was a contested case pending on July 1, 1967; hence, the amendment to the Administrative Procedure Act containing the provisions for judicial review that in the present case were held invalid in the district court did not apply to that case. Actually, the judicial review provisions have been applicable to all agencies of the executive department since 1967, except those agencies expressly exempted. The NIC was not exempted. See NRS 233B.030. We interpret the adoption by reference of the Administrative Procedure Act by the 1973 Legislature as a reaffirmation of the legislative intent to abolish the independent common law action.

Just as the Legislature under the police power could and did abolish the old common law cause of action against the employer and abolish the latter's defenses and merge both into a comprehensive statutory system which provided a fixed and certain indemnity when the Nevada Industrial Insurance Act was first enacted, so, now, the Legislature can abolish the independent, original cause of action against the NIC. It is settled by a host of authorities that no person has a vested right in a rule of law, nor can anyone assert a vested right in any particular mode of procedure. The legislative mandate is unrestricted, subject, of course, to constitutional limitations. Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 171 P. 166 (1918); Humboldt Land & Cattle Co. v. Sixth Judicial Dist. Court, *supra;* Deibeikis v. Link-Belt Co., 104 N.E. 211 (Ill. 1914); Hunter v. Colfax Consol. Coal Co., 154 N.W. 1037 (Iowa 1915); State ex rel. Davis-Smith Co. v. Clausen, 117 P. 1101 (Wash. 1911); Zancanelli v. Central Coal & Coke Co., 173 P. 981 (Wyo. 1918); Munn v. Illinois, 94 U.S. 113 (1876).

We turn to consider the final reason given by the district judge in declaring the aforementioned amendments to the Nevada Industrial Insurance Act unconstitutional: "Said sections of Chapter 762 illegally gave a right to appeal decisions of an appeals officer in workmens compensation cases when such an appeal can legally lie only from a constitutional court or tribunal in such cases." We find this contention completely meritless.

The district judge, in condemning chapter 762 on this ground, predicated his reasoning on dicta appearing in Ormsby County v. Kearney, *supra,* 37 Nev. at 356, 142 P. at 812, where CHIEF JUSTICE TALBOT declared in his separate, concurring opinion: "As the constitution limits the judicial power in this state to the supreme court, district, justice, city, and municipal courts, it follows that it does not provide for an appeal to the district court from the decision of any tribunal not mentioned in that document." JUSTICE TALBOT's dictum, however, overlooked that provision of our Constitution that vests district courts with "final appellate jurisdiction in cases arising in justice courts, and such other inferior tribunals as may be established by law." Nev. Const. art. 6, § 6. In accordance with this constitutional mandate, this court has repeatedly affirmed the district court's power to entertain appeals from administrative agency hearings and rulings, despite the fact that such agencies are not mentioned in the Constitution. Moreover, we have outlined the scope of judicial review in such cases.[7]

Although we have not heretofore directly examined the review provisions of the Administrative Procedure Act, we have, on two occasions, implicitly recognized and affirmed the power of the district court to entertain appeals from administrative agencies under the provisions of that Act. In Harrison v. Department of Highways, 87 Nev. 183, 484 P.2d 716 (1971), we noted that NRS 233B.140 affords the court a limited power to modify or reverse agency decisions. In Mead v. State Dep't of Health, 91 Nev. 152, 532 P.2d 611 (1975), we implicitly affirmed the review provisions of NRS 233B.140 by holding that governmental entities were not "persons" within the meaning of the Act so that such entities could prosecute appeals to the district court. We now make explicit our approval of the review provisions of the Administrative

[7]See, e.g., State ex rel. Johns v. Gragson, 89 Nev. 478, 482, 515 P.2d 65, 68 (1973) (review of zoning board decision is limited to the record before the administrative tribunal, and in the absence of a showing that the agency acted fraudulently or arbitrarily, the district court may not substitute its own opinion for that of the city commissioners); Miller v. West, 88 Nev. 105, 493 P.2d 1332 (1972) (review of decision of State Welfare Division is limited to the record before the Welfare Division and must be affirmed if the decision is supported by substantial evidence). See, also, City of Reno v. Folsom, 86 Nev. 39, 464 P.2d 454 (1970); Holland Realty Inv. Co. v. State, 84 Nev. 91, 436 P.2d 422 (1968); City of North Las Vegas v. Public Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967).

Procedure Act. Turning to those provisions, we note that NRS 233B.140(2)[8] provides in substance that within 30 days after the service of the petition for review, or within further time allowed by the district court, the Appeals Officer shall transmit to the district court the original or a certified copy of the entire record of the proceedings under review. If, before the date set for the hearing, application is made to the district court for leave to present additional evidence, the court may order such evidence presented to the Appeals Officer. NRS 233B.140(3).[9] The review shall be confined to the record; however, in case of alleged irregularities in procedures before the Appeals Officer not shown in the record, proof thereon may be taken in the district court. NRS 233B.140(4).[10] While the district court may not substitute its judgment for that of the Appeals Officer as to the weight of the evidence on questions of fact, the district court may affirm the decision of the Appeals Officer, remand for further proceedings, or reverse or modify the decision if substantial rights of the appellant have been prejudiced because the Appeals Officer's findings, inferences, conclusions, or decisions are (a) in violation of constitutional or statutory provisions, (b) in excess of statutory authority, (c) made upon unlawful procedure, (d) affected by other error

[8]NRS 233B.140(2):

"Within 30 days after the service of the petition, or within further time allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under view. By stipulation of all parties to the review proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs. The court may require or permit subsequent corrections or additions to the record."

[9]NRS 233B.140(3):

"If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings or decisions with the reviewing court."

[10]NRS 233B.140(4):

"The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs."

of law, (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the record, or (f) arbitrary or capricious or characterized by abuse of discretion. NRS 233B.-140(5).[11]

Thus we see that relief from a decision of the Appeals Officer is clearly provided for under the Administrative Procedure Act and that the district court is given very broad supervisory powers to insure that all relevant evidence is examined and considered by the Appeals Officer. His findings and ultimate decisions, however, are not to be disturbed unless clearly erroneous or otherwise amount to an abuse of discretion.

When the Nevada Industrial Insurance Act was first enacted in 1913, it represented an entirely new approach to the recovery of compensation by an employee injured or killed on the job. The old procedure of filing suit against an employer who had accepted the terms of the Act was abolished, and recovery by an employee under the terms of the Act was made his exclusive remedy against the employer. NRS 616.270(3); NRS 616.370(1); cf. Cummings v. United Resort Hotels, Inc., 85 Nev. 23, 449 P.2d 245 (1969); McColl v. Scherer, 73 Nev. 226, 315 P.2d 807 (1957), citing both NRS 616.270 and NRS 616.370 and recognizing that recovery under the Industrial Insurance Act is the exclusive remedy of the employee against his employer if his employer has accepted the terms of the Industrial Insurance Act. In response to this departure from the prior procedure, there was concern that the Act was in violation of the Nevada Constitution and therefore "unconstitutional". The Act, however, was upheld by this court as a valid exercise of the State's police power. Nevada Indus. Comm'n v. Washoe County, 41 Nev. 437, 446, 171 P. 511, 513 (1918).

---

[11]NRS 233B.140(5):

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

"(a) In violation of constitutional or statutory provisions;

"(b) In excess of the statutory authority of the agency;　.

"(c) Made upon unlawful procedure;

"(d) Affected by other error of law;

"(e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

"(f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The 1973 Nevada Legislature amended the Industrial Insurance Act by chapter 762 to create the administrative position of NIC Appeals Officer. This amendment empowered that official to conduct administrative hearings on contested workmen's compensation claims and delegated quasi-judicial administrative powers to the Appeals Officer so that he could properly carry out his administrative duties. In addition, it abolished the old procedure of filing an independent suit against the NIC if a claimant was dissatisfied with the NIC's award of compensation by providing that judicial review of the administrative decisions of the Appeals Officer was limited to the scope of judicial review of other administrative decisions under the Nevada Administrative Procedure Act.

We would do well to recall the approach that this court has taken with respect to allegations that a particular statutory change is unconstitutional. MR. JUSTICE COLEMAN, in Vineyard Land & Stock Co. v. District Court, *supra,* 42 Nev. at 26–27, 171 P. at 172–173, set forth the proper guidelines when he wrote:

"We do not accept radical changes without protest. If a statute radically different from anything to which we have been accustomed is enacted, the average lawyer becomes alarmed and at once brands it as unconstitutional. Lawyers generally were very much excited and alarmed when the statutes of the various states creating railroad commissions, corporation commissions, industrial insurance commissions, and the like, were enacted. They considered them not only unconstitutional but revolutionary. Lawyers do not feel that way about the matter today, because they have become used to such statutes. . . .

"We are too prone to view legislation as unconstitutional, unmindful of the fact that, unless a statute violates the letter or spirit of some portion of the constitution, it should be upheld. . . .

" '. . . These hidebound constructions are unnecessary, and they imperil the existence of constitutional government. The constitutional guarantees must be maintained; but the only way to maintain them is to mold them to the requirements of modern civilization. They must be reins to guide the chariot of progress in the road of safety, not barriers across its track.' "

We conclude that the provisions of chapter 762 amending the Nevada Industrial Insurance Act do not violate the Nevada Constitution. Therefore, the judgment of the district court was erroneous as a matter of law, and it is reversed.

THOMPSON, J., concurs.

BATJER, C. J., with whom ZENOFF, J., joins, concurring:

We agree that the judgment of the district court was erroneous as a matter of law and must be reversed, but for an entirely different reason than those announced by JUSTICE MOWBRAY, with whom JUSTICE THOMPSON concurs.

We perceive no valid constitutional question to be decided. Proceedings instituted under the provisions of Nevada Industrial Insurance Act, hereafter referred to as N.I.I.A., are not in reality a lawsuit, but special proceedings essentially contractual in character, sanctioned and encouraged by statute, but not compulsorily imposed on the parties. An employer may elect to accept the terms of the N.I.I.A., by giving notice and paying to the Nevada Industrial Commission all premiums. NRS 616.305.[1] The employee, where the employer has made the election pursuant to NRS 616.305, is deemed by implication to have accepted the statutory provisions of the N.I.I.A. at the time of injury for which liability is claimed if he does not give notice to the employer of an election to reject the statutory terms. NRS 616.305. The respondents in this case and their employers were free to decline to adopt the terms of the N.I.I.A. to govern their relationship, and instead be governed by such rights and remedies as might be accorded them under the common law with its constitutional and statutory modifications. See Hecht v. Parkinson, 70 So.2d 505 (Fla. 1954); McNeese Construction Company v. Harris, 273 S.W.2d

---

[1]NRS 616.305: "1. Where the employer, as provided by this chapter, has given notice of an election to accept the terms of this chapter, and the employee has not given notice of an election to reject the terms of this chapter, the employer shall provide and secure, and the employee shall accept, compensation in the manner provided by this chapter for all personal injuries sustained arising out of and in the course of employment.

"2. Every employer electing to be governed by the provisions of this chapter, before becoming entitled to the benefits of this chapter in the providing and securing of compensation to the employees thereunder, shall, on or before July 1, 1947, and thereafter during the period of his election to be governed by the provisions of this chapter, pay to the commission all premiums in the manner provided in this chapter. During the period of his election to be governed by the provisions of this chapter he shall comply with all conditions and provisions thereof.

"3. Failure on the part of any employer to pay all the premiums as required by the provisions of this chapter shall operate as a rejection of the terms of this chapter. In the event of any rejection of this chapter, or the terms hereof, such rejecting employer shall post a notice of rejection of the terms of this chapter upon his premises in a conspicuous place. The employer at all times shall maintain the notice or notices so provided for the information of his employees."

355 (Ky. 1954); Fougnie v. Wilbert & Schreeb Coal Co., 286 P. 396 (Kan. 1930); Sollitt Construction Company v. Walker, 135 N.E.2d 623 (Ind.App. 1956); Grice v. Suwannee Lumber Manufacturing Company, 113 So.2d 742 (Fla.App. 1959). Cf. Reliford v. Eastern Coal Corporation, 149 F.Supp. 778 (E.D. Ky. 1957).

The Supreme Court of the United States, in determining whether the Wisconsin Workmen's Compensation Act deprived the employer of equal protection of the law in violation of the 14th Amendment of the United States Constitution, held that the employer "having elected to accept the provisions of the law, and such benefits and immunities as it gives, may not escape its burdens by asserting that it is unconstitutional. The election is a waiver and estops such complaint." Booth Fisheries Co. v. Industrial Comm., 271 U.S. 208, 211 (1926), citing Daniels v. Tearney, 102 U.S. 415 (1880), and Grand Rapids & I. R. Co. v. Osborn, 193 U.S. 17 (1904).

The same reasoning would apply by analogy to the contentions raised by respondents in this case that certain amendments to the N.I.I.A. found in 1973 Statutes of Nevada, Chapter 762, are unconstitutional.[2] Likewise it is apparent that the district court erred when it ruled sections 4, 5, 6, 7, 8, 9 and 12 of the above mentioned Chapter 762 to be unconstitutional upon the grounds they violated article 6, section 1 of the Nevada Constitution.

GUNDERSON, J., dissenting:

Like my brothers BATJER and ZENOFF, I reject the rationale espoused by our brothers MOWBRAY and THOMPSON. The Nevada Constitution establishes that the doctrine of separation of powers is fundamental to this state's system of government. City of No. Las Vegas v. Daines, 92 Nev. 292, 550 P.2d 399 (1976); Dunphy v. Sheehan, 92 Nev. 259, 549 P.2d 332 (1976). Thus, I agree that severely circumscribed judicial review, such as here concerned, will violate separation of powers if such limitations are imposed without prior intelligent agreement. However, in my view, the legislative scheme does not, in fact, provide adequate mechanics through which a workman may choose intelligently whether to accept or reject its provisions. Thus, I disagree that constitutional infirmities may

---

[2]Caveat: For those employers enumerated in NRS 616.275, as well as their employees, the Nevada Industrial Insurance Act is conclusive, compulsory and obligatory, and the reasoning of this concurring opinion might be inapposite as to them.

be ignored by classifying our workman's compensation law as "contractual."

Nothing in the record indicates that new employees are consistently advised of the option to elect, the advantages and disadvantages of election, or the rights under both possibilities, in order that they may make a voluntary, knowing, and intelligent election. Upon failure to reject the provisions of the Act for any reason, whether due to ignorance or otherwise, an employee is conclusively presumed to have elected to be covered by the Act, and therefore is precluded from asserting his or her common law rights. NRS 616.305; Quicksilver Co. v. Thiers, 62 Nev. 382, 152 P.2d 432 (1944). Under such circumstances, the right to elect is illusory and negative, and cannot realistically be equated to situations in which parties mutually assent to special proceedings to determine their relative rights.

Having thus respectfully noted the tenuous nature of the implied "contract" upon which JUSTICES BATJER and ZENOFF rely to by-pass concern for separation of powers, I now wish to review, with equal deference and respect, the views stated by the court's other minority, JUSTICES MOWBRAY and THOMPSON.

From the inception of Nevada's Industrial Insurance Act, this court has consistently ruled that, in contested cases, an injured workman has the right to an original determination of facts regarding his right to compensation, and that, pursuant to our constitution, this is a judicial function committed to the district courts. Nevada Indus. Comm'n v. Strange, 84 Nev. 153, 437 P.2d 873 (1968); Dahlquist v. Nevada Ind. Com., 46 Nev. 107, 207 P. 1104 (1922); State v. Nevada Ind. Commission, 40 Nev. 220, 161 P. 516 (1916).

In State v. Nevada Ind. Commission, *id.* at 226, 161 P. at 518, we stated: "Necessarily, the claim of an employee, rejected in whole or in part by the industrial commission upon *any question of fact* going to the extent of his injuries . . . *must be determined in an action at law* against the commission." (Emphasis added.) Further, we held that this was purely a judicial function to be properly performed only by a district court: "A district court is the proper forum to determine the legality of his claim, and, if a legal claim, the amount he is entitled to recover under the statute." *Id.* at 227, 161 P. at 518. We reaffirmed this position in Dahlquist v. Nevada Ind. Com., cited above, and again in Nevada Indus. Comm'n v. Strange, cited above, wherein we stated at 155, 437 P.2d at 875: "[T]his court [has] clearly established that an aggrieved employee who was dissatisfied with the award of compensation granted by the Commission *had the right to bring an original*

*action* in district court against the Commission and that the enforcement of that right in the district court involved a justiciable controversy over which our district courts have original jurisdiction *as provided in the Nevada Constitution.*" (Emphasis added.)

The 1973 amendment radically modifies our industrial compensation law not only by shifting from the judicial branch of government to the executive a function we have heretofore deemed purely judicial, but also by eliminating altogether effective judicial intervention in disputed cases. This is clearly improper.

By section 4, the amendment supplants judicial intervention in contested claims between the commission and injured workmen by creating the NIC "appeals officer" to hear and decide such cases. In essence, this officer is nothing more than an unelected adjudicator who is subservient to the executive branch and performs functions previously committed to an independent district court. He is appointed by the governor for a minimum term of four years and remains in office thereafter so long as his disposition of disputed cases pleases the executive branch. NRS 616.542(1). His salary is paid from the state insurance fund, the same fund from which employees receive compensation. NRS 616.542(1). The amendment empowers him to hear and decide contested claims between injured workmen and the commission, itself a part of the executive branch. NRS 616.542. In conducting such hearings, he can issue subpoenas requiring the attendance of witnesses or the production of documents, call and examine witnesses or parties, pass upon all questions arising during the course of a hearing, permit or deny discovery, dispose of procedural requests, and generally guide the course of a proceeding or pending hearing. NRS 616.226. No judicial proceedings may be initiated until this officer renders his supposedly impartial decision, which is the final administrative determination of the matter. NRS 616.-542(4) and 616.543.

The amendment further restricts ultimate judicial action to a narrow review of the officer's decision pursuant to the Nevada Administrative Procedure Act. NRS 616.543. This review is quite circumscribed and limited. See: Harrison v. Dep't of Highways, 87 Nev. 183, 484 P.2d 716 (1971). Unless clearly erroneous, the court must accept the appeals officer's findings and conclusions. NRS 233B.140(5). This necessarily requires the court to defer to the officer's findings and conclusions, and the court can no longer make de novo factual determinations. Indeed, if the claimant desires new evidence to be considered,

he must petition the court, demonstrate the evidence is material, and show good reason why it was not presented to the appeals officer. NRS 233B.140. Even if the claimant satisfies the court that new evidence should be considered, the court is not authorized to receive it. Instead, the evidence must first be presented to the appeals officer for his consideration. NRS 233B.140(3).

In my view, to fasten the workman with the legal, equitable, and factual determinations of a subservient member of the executive branch in this fashion, divesting his right to independent determinations by a real judicial tribunal, not only fails to protect the claimant's rights under the Industrial Insurance Act, but violates our constitution.

Regardless of what may be permitted in other jurisdictions, it is for our court, based on its constitution, to determine what powers must be kept separate between the three branches of government. Article 3, section 1 of our constitution provides: "The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,— the Executive and the Judicial; and *no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, . . .*" (Emphasis added.) Article 6, section 1 vests the judicial power of our state only in a supreme court, district courts, justices of the peace, and courts the legislature establishes for municipal purposes in incorporated cities and towns. Thus, in the face of these provisions and our firmly established case law, I cannot perceive how the legislature may constitutionally confer such broad power on the appeals officer to the exclusion of the judiciary.

I recognize that some jurisdictions do permit executive officers to exercise functions similar to those of the appeals officer. However, this is permitted pursuant to constitutional provisions different from ours, and, for this reason, authority from those jurisdictions is not here persuasive or even germane. For example, while some administrative officers on the federal level exercise such power, it is acknowledged that the United States Constitution has no provision regarding separation of powers as set forth in article 3, section 1 of our constitution. Further, while the exercise of judicial power by federal agencies may arguably be necessitated due to peculiar needs of the federal system, Nevada has different needs. Even now, I note, people are becoming dissatisfied as the federal bureaucracy burgeons, and as their rights to due process become more and more

blurred. For these reasons, the federal cases are not, to me, persuasive authority for stretching Nevada's constitution to sustain the office of the NIC appeals officer.

I am aware of no sister state having constitutional provisions like ours which permit the commission or one of its employees to exercise such powers. In those jurisdictions where the commission does exercise such powers, the people have authorized it by specific constitutional provisions. See: Provenzano v. Long, 64 Nev. 412, 183 P.2d 639 (1947); Michigan Mut. Liability Co. v. Baker, 294 N.W. 168 (Mich. 1940). For example, when the people of California adopted their workmen's compensation law, they also saw fit to amend their constitution to permit the legislature to "provide for the settlement of any disputes . . . by arbitration, or by an industrial accident board, by the courts, or by either or any or all of these agencies, anything in this Constitution to the contrary notwithstanding." Cal. Const. art. 20, § 21 (1911). The manifest purpose of this amendment was to obviate objections, based on constitutional provisions almost identical to ours, to the determination of compensation by a body other than a judicial tribunal. See: Western Metal Supply Co. v. Pillsbury, 156 P. 491, 497 (Cal. 1916) (Angellotti, C. J., concurring). Indeed, the California Supreme Court has noted that their commission, in awarding compensation, is exercising judicial power and acting as a court, and, but for the special constitutional amendment, this would be improper due to constitutional provisions like ours. See: Carstens v. Pillsbury, 158 P. 218 (Cal. 1916); Western Metal Supply Co. v. Pillsbury, cited above; Pacific Coast Casualty Co. v. Pillsbury, 153 P. 24 (Cal. 1915).

The people of Nevada have not so liberalized our constitution as to sanctify the legislative establishment of a judicial tribunal within the executive department. On the contrary, Nevada's constitutional mandates, regarding separation of powers and the vesting of judicial power only in specifically enumerated courts, closely parallel those of New Mexico and Maryland. Each of these jurisdictions has faced similar attempts by its legislature to permit the commission to determine one's right to compensation and make such determination final, subject only to a very limited judicial review.

In State v. Mechem, 316 P.2d 1069 (N.M. 1957), the New Mexico Supreme Court denounced their legislature's attempt to preclude de novo judicial determination of a workman's right to compensation in disputed cases. That court astutely perceived that it was improper to permit the commission to determine one's right to compensation because the commission

would then be determining rights and liabilities between individuals. The court stated: " 'The rights and liabilities of a private individual are fixed by law and are to be determined by judicial inquiry. . . . The fact that an appeal is provided for from the decision of the board . . . to the district court does not alter the character of the proceedings.' * * * Here, the legislature has attempted to create an executive agency, clothe it with judicial power, on a parity with district courts, and invest it with statewide jurisdiction. This cannot be done." *Id.* at 1070–71.

Maryland also has constitutional provisions like ours which forbid persons performing executive functions from exercising judicial functions and vest all judicial power only in specifically enumerated courts. Maryland's workmen's compensation statute permits the commission to make compensation determinations which are final and conclusive if supported by substantial evidence. However, Maryland's law also provides for a *de novo* trial on appeal. See: Md. Code Ann. art. 101, § 56 (Supp. 1976); Abell v. Albert F. Goetze, Inc., 226 A.2d 253 (Md. 1967). "[I]t is rather clear that, but for this aspect of the Workmen's Compensation Law, [Maryland's] Act would have surely been declared unconstitutional if it had not provided for the right to a jury trial by a *de novo* appeal." County Coun., Montgomery Cty. v. Investors F. Corp., 312 A.2d 225, 256 (Md. 1973) (Barnes, J., concurring in part and dissenting in part).

In reaching the conclusion that the 1973 amendment does not violate the separation of powers, JUSTICES THOMPSON and MOWBRAY rely heavily on Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803 (1914). However, a careful analysis of *Kearney* clearly manifests it is not persuasive authority for upholding the constitutionality of the office of the NIC appeals officer, and, in fact, mandates an opposite conclusion.

*Kearney* involved the constitutionality of Nevada's water law of 1913 which authorized the state engineer to determine relative rights and empowered him to administer and regulate the use of water in accordance with his determinations. The majority of the court upheld the state engineer's power to determine relative water rights for *administrative purposes only*. However, by scrutinizing the majority position set forth by JUSTICES NORCROSS and TALBOT and the dissenting position by JUSTICE McCARRAN, it is plain that their opinions do not support the constitutionality of the office of the NIC appeals officer.

JUSTICE NORCROSS set the tone for the majority by first

explaining that the Act before the court concerned the economic use and distribution of water, a scarce commodity in the arid west. He noted that, due to the public interest in distributing water for the best economic use, not only could the state regulate water, but such regulation was the only effective manner to control this scarce natural resource. Ormsby County v. Kearney, cited above at 336–38, 142 P. at 805–806. JUSTICE NORCROSS concluded that the engineer could, in his administration of the water law, make administrative determinations regarding relative water rights. *Id.* at 339, 142 P. at 806. However, in reaching this conclusion, NORCROSS stressed two important points. First, "[t]he right . . . to have the matter finally adjudicated by the courts is not attempted to be taken away," *id.* at 339, 142 P. at 806, and, in the event of disputes as to water rights, the "parties contesting *must* initiate an adjudication by the courts. . . ." (Emphasis added.) *Id.* at 350, 142 P. at 810. Secondly, NORCROSS, quoting from other jurisdictions, elucidated the true nature of the engineer's proceeding to determine relative water rights and explained: (1) " 'Affirmative relief in favor of one party as against another is not its object,' " *id.* at 346, 142 P. at 808, (2) in the proceeding, a party " 'does not obtain redress for an injury, but secures evidence of title to a valuable right . . . ,' " *id.* at 344, 142 P. at 808, and (3) the proceeding does not result " 'in a judgment for damages to a party for injuries sustained . . . ,' " but only the " 'adjustment of the priorities of appropriation of the public waters of the state . . . ,' " *id.* at 343, 142 P. at 807. Thus NORCROSS found the Act constitutionally valid because it in no way affected a party's right to de novo judicial determinations and did not involve either affirmative relief or redress for injuries.

In his concurring opinion, JUSTICE TALBOT also concluded that the engineer could constitutionally determine relative water rights for administrative purposes. *Id.* at 354, 142 P. at 811. TALBOT found this permissible because the state, pursuant to its police power, could regulate such an important commodity as water just as it regulates certain other business and property. *Id.* at 354, 142 P. at 811. However, JUSTICE TALBOT, like NORCROSS, emphasized that such determinations could not be conclusive against adjudication by the courts. He noted that, if the Act provided for no appeal from the engineer's determinations, our constitution would be violated. *Id.* at 356, 142 P. at 811–12. Further, he stated that "[t]he fact that the statute provides for an appeal cannot make the determination of the state engineer binding as a final adjudication of water rights or endow him with judicial power to make a final determination of rights,

when the constitution directly limits that power to the courts specified." *Id.* at 356–57, 142 P. at 812.

Finally, JUSTICE MCCARRAN, dissenting, found that Nevada's constitution would not permit such a method of determining water rights, even for administrative purposes. MCCARRAN argued that article 6, section 6 of Nevada's constitution limited the district court's final appellate jurisdiction to cases from justice courts and inferior tribunals established pursuant to article 6, section 1. Since the state engineer was neither a justice court nor an inferior tribunal, the district court had no appellate jurisdiction over the engineer's decision. Thus, MCCARRAN concluded the Act was unconstitutional and stated: "As has already been stated, the constitution limits the appellate jurisdiction of the district court to those cases appealed from justices' courts and such other inferior tribunals as may be established by law, and hence it follows that unless we read into this provision of the constitution either that the state engineer is an inferior tribunal, established by the water law of 1913, or that the district court will take appellate jurisdiction in cases other than those conferred upon it by the organic law, it necessarily follows that the provision of the water law of 1913, as to appeals from the orders and determinative decrees of the state engineer, are unconstitutional, and the district court would be without power to assume such jurisdiction. If we view the contemplated final orders or decrees of the state engineer and his determinations in the light of these conclusions, it unanswerably follows that, there being no appeal from the determinations of the state engineer, they are therefore final determinations, and these final determinations are in matters in which the right of possession to property is involved, and the party aggrieved is cut off from access to the civil courts, and the constitutional guaranty is nullified." *Id.* at 379, 142 P. at 819.

Thus, reviewing the reasoning of each justice in *Kearney,* it is clear none of them would uphold the office of the appeals officer in the instant case. Since the proceeding before the appeals officer seeks affirmative relief in favor of one party and results in an award of damages for injuries sustained, Norcross would distinguish this proceeding from that before the engineer in which no affirmative relief is sought. In addition, NORCROSS would find the 1973 amendment constitutionally invalid for precluding a claimant's right to a de novo judicial determination in disputed cases. Similarly, JUSTICE TALBOT would also find the amendment unconstitutional because, even though a workman can obtain a limited appeal pursuant to the Administrative

Procedure Act, the determination of the appeals officer, for all practical purposes, is the final determination, conclusive against de novo adjudication by the courts. Finally, McCARRAN would denounce not only the office of the NIC appeals officer but any system which deprived the district court of the jurisdiction vested in it by our constitution. In summary, it is patent that *Kearney* is not persuasive authority for upholding the office of the NIC appeals officer.

Thus, as my brothers BATJER and ZENOFF evidently see, the statutory scheme is insupportable, unless "consent" or "contract" may be invoked to save it. Since only those two justices, a minority of this court, express the view that the illusory "consent" raised by the statute results in a valid contract, the validity of that rationale remains in serious doubt even in this court. Moreover, since the presumption relied upon to raise a "contract" lacks a rational basis, I suggest that to avoid application of the Nevada Constitution my brothers BATJER and ZENOFF may have raised equally serious federal concerns. See, for example, Western & Atl. R. Co. v. Henderson, 279 U.S. 639 (1929); *cf.* Edwards v. Sheriff, 93 Nev. 13, 558 P.2d 1144 (1977).