STATE INDUSTRIAL INSURANCE SYSTEM, Appellant, *v.* DANIEL SNAPP, Respondent.

No. 14498

May 10, 1984

680 P.2d 590

*David F. Sarnowski,* Associate General Counsel, State Industrial Insurance, Carson City, for Appellant.

*David Dean,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This appeal concerns judicial review of an appeals officer's denial of worker's compensation rehabilitation maintenance. The district court reversed the administrative tribunal and granted the claimant a $9,860.00 judgment and $1,800.00 in attorney's fees. We hold that the appeals officer's decision did not constitute an abuse of discretion and that the lower court's order granting attorney's fees was founded upon an inapplicable statute. Consequently, we reverse.

On June 6, 1978, respondent Daniel Snapp was employed by Max Riggs Construction Co. On that date, Snapp was removing concrete forms with a twelve pound sledgehammer. The repetitive pounding injured Snapp's right elbow. The injury was diagnosed as "tennis elbow."

Conservative treatment was prescribed until January 16, 1979, when a tennis elbowplasty was performed. During his recovery, Snapp complained of swelling and numbness in the fingers. On May 4, 1979, a neurological examination of Snapp was performed. The examining physician reported that "[t]he patient presents with a difficult problem, [sic] due to poor cooperation and associated pain in the right arm, rendering formal strength testing somewhat unreliable."

In May and July of 1979, in response to Snapp's complaints of swelling and tenderness, the attending physician, Dr. Cunningham, suggested that Snapp seek work lighter than carpentry. Dr. Cunningham, however, noted that Snapp had good grip strength. After continued complaints, Dr. Cunningham performed a second operation on Snapp's right elbow. Throughout this second postoperative period, Snapp continued to complain of pain and numbness. Finally, on April 16, 1980, Dr. Cunningham reported to Bruce Acaiturri, Rehabilitation Counselor for SIIS, that Snapp was employable, that he could use an overhead saw and that he could lift 30 pounds.

Initially, SIIS accepted Snapp's worker's compensation claim following his injury on June 6, 1978. Snapp received medical benefits for his first surgery and temporary total disability benefits until Dr. Cunningham released him to light work in July, 1979. From July 9, 1979, until August, 1979, Snapp

was paid rehabilitation maintenance. These payments were terminated because Snapp failed to cooperate in locating employment. Following his second surgery, Snapp received temporary total disability payments until January 21, 1980. On that date, rehabilitation maintenance payments were resumed.

Beginning in February of 1980, Acaiturri contacted Snapp's former employer, Max Riggs Construction, about the possibility of rehiring Snapp as a carpenter. Max Riggs was apprised of Snapp's inability to do any heavy lifting or to use hammers. A position was made available to Snapp on March 4, 1980. Snapp, however, wrote his counsel on March 7, 1980, and stated that Max Riggs had told him that he would have to hammer. Because Dr. Cunningham advised him not to continue in carpentry, Snapp did not report for work. Consequently, SIIS terminated the rehabilitation maintenance payments as of March 4, 1980.

Snapp challenged the termination of his rehabilitation maintenance before a SIIS hearings officer on April 8, 1980. The hearings officer held that Snapp was not entitled to temporary total disability compensation under NRS 616.585(3)[1] or rehabilitation maintenance in accordance with NRS 616.-222(3)[2] because he had been released for work by competent medical authority and a job within his physical limitations had been secured. After the decision, the parties agreed to meet with Max Riggs Construction to discuss alternatives to carpentry.

Following that meeting, Acaiturri wrote to Dr. Cunningham and described two different positions at Max Riggs. On April 16, 1980, Dr. Cunningham authorized Snapp to operate an overhead saw at Max Riggs. Snapp reported to work on April 21, 1980. After working at the saw for 3½ hours, he quit. He complained that operating the saw and hammering had reinjured his elbow.

On April 28, 1980, Snapp appealed the hearings officer's rejection of his claim. Following hearings on July 1 and 29, 1980, the appeals officer issued an interim order referring Snapp to the Clark Rehabilitation Center in Las Vegas for an

---

[1]NRS 616.585(3) (1977) provides:

For purpose of temporary total disability benefits under this section, the period of temporary total disability shall cease when any competent medicial authority determines such employee is capable of any gainful employement.

[2]NRS 616.222(3) (1977) provides:

Any workman eligible for compensation other than accident benefits will not be paid those benefits if he refuses counseling, training or other rehabilitation services offered to him by the commission. *See also,* Regulation 14.070 (1978).

intake evaluation of up to six days. In his discharge summary, Dr. Nogueria of the Rehabilitation Center stated on December 8, 1980, that, although Snapp would "benefit from a further course of intensive three week rehabilïtation program . . ., the lower level of cooperation demonstrated by [Snapp] . . . together with the . . . patient's admission that he did not want further therapy, would limit the scope of the rehabilitation program." SIIS submitted the Nogueria report to the appeals officer and stood "on its former position to close the rehabilitation portion of this case."

On September 8, 1981, the appeals officer issued his decision. The officer stated:

> The issues to be resolved concern the propriety of the commission's discretionary decision to terminate rehabilitation benefits. While there is conflicting evidence in the record, the preponderance of the evidence demonstrates that Snapp has made no sincere effort to be gainfully reemployed. Snapp has consistently demonstrated by his actions a lack of cooperation in any effort to secure employment and his statements to the contrary were not credible based on his appearance and demeanor as well as their inconsistency with his actions.

Accordingly, Snapp's rehabilitation benefits were held to have been properly terminated and the hearings officer's decision was affirmed.

Snapp petitioned the district court under NRS 233B.130 for review of the appeals officer's affirmance of the termination of Snapp's rehabilitation benefits. Although SIIS answered the petition, it failed to appear at the hearing on July 22, 1982. Nevertheless, the court heard Snapp's evidence and entered judgment in the sum of $9,860.00. The court also taxed costs and attorney's fees "pursuant to NRS 18.010" in the sum of $1,800.00 against SIIS. SIIS's motion to set aside judgment was denied because the lower court ruled that SIIS had taken an appeal from the judgment and thereby divested the court of jurisdiction. In the order denying the motion, the court restated its belief that "the termination of [Snapp's] rehabilitation benefits was unreasonable . . . ." The court "was of the opinion that [Snapp] had been assigned work which was immical [sic] to his past medical problem of being unable to use a hammer." Only the order granting Snapp a judgment in the sum of $9,860.00 and attorney's fees in the sum of $1,800.00 has been appealed.[3]

---

[3]Although SIIS failed to appear at the judicial review proceeding, it did answer Snapp's petition. Moreover, the district court considered the evidence before the agency and reached the merits in granting judgment for

## Attorney's Fees

The award of attorney's fees in the sum of $1,800.00 to Snapp was founded upon NRS 18.010.[4] In McCracken v. Cory, 99 Nev. 471, 664 P.2d 349 (1983), this court held that NRS 18.010 applies only to actions for money damages. There, the district court increased the award of attorney's fees granted to respondent's counsel by the NESD Board of Review for successfully petitioning the district court for judicial review of a decision of the NESD. Because the district court's award of attorney's fees in *McCracken* was based in part on NRS 18.010, it was reversed. In the present case, Snapp was seeking reinstatement of his rehabilitation maintenance payments, not money damages. Therefore, NRS 18.010 was not applicable and the attorney's fee award was erroneous.

## Rehabilitation Maintenance

The lower court's decision did not designate the statutory authority under which it granted Snapp compensation benefits. The judgment merely stated that the award represented twenty-five bi-weekly disability payments.

In a petition for judicial review of an appeals officer's decision under NRS 233B.130, the decision is not to be disturbed by the district court "unless [it is] clearly erroneous or [it] otherwise amount[s] to an abuse of discretion." Nevada Industrial Comm'n v. Reese, 93 Nev. 115, 124, 560 P.2d 1352, 1358 (1977); Nevada Industrial Comm'n v. Williams, 91 Nev. 686, 541 P.2d 905 (1975); NRS 233B.140(5)(e), (f).

The administrative record indicates that Snapp demonstrated a low level of cooperation at the Rehabilitation Center and he admitted that he did not want further therapy. Gary Avery, the general carpentry foreman for Max Riggs, testified before the appeals officer that he told Snapp just to saw the redwood boards. Avery testified that he also told Snapp that, if he felt that he could not hammer without reinjuring his arm,

---

Snapp. Because the district court was limited to the administrative record, *see* Nevada Industrial Comm'n v. Horn, 98 Nev. 469, 653 P.2d 155 (1982), which is presently before this court, SIIS' s nonappearance did not waive its right to appeal.

[4]NRS 18.010(2)(a) (1982) provides:

2. The court may make an allowance of attorney's fees to:
(a) The plaintiff as prevailing party when the plaintiff has not recovered more than $10,000, . . . .

another worker would be assigned to do the hammering. Further, Avery stated that during the 3½ hours on the job Snapp cut 5 to 6 pieces of 2 × 4's and attempted to nail one or two of those pieces back together. Altogether, Avery estimated that Snapp drove fifteen nails. Avery opined that Snapp actually worked no longer than twenty minutes.

On this record the appeals officer's decision was supported by some competent evidence. Thus, the lower court erred in reversing that decision and awarding Snapp rehabilitation maintenance benefits. Accordingly, the order of the district court granting Snapp "disability benefits" and attorney's fees and reversing the appeals officer's decision denying the compensation claim is hereby reversed.